35 P.(2d) 308

STATE ex rel. MARYLAND CASUALTY CO. v. STATE HIGHWAY COMMISSION et al.

No. 3900.

Supreme Court of New Mexico.

July 24, 1934.

Rehearing Denied Sept. 17, 1934.

Francis C. Wilson and Herbert K. Greer, both of Santa Fé, for appellant.

E. K. Neumann, Atty. Gen., Quincy D. Adams, Asst. Atty. Gen., and Henry G. Coors, of Albuquerque, for appellees.

WATSON, Chief Justice.

This suit in mandamus seeks to compel the state highway commission to pay from the state road fund some $5,000 as unpaid premium on a policy of compensation insurance issued by the relator at the instance of the respondents. From a judgment dissolving the alternative writ relator has appealed.

By the policy appellant obligated itself to pay to the employees of appellee who might suffer injuries such sums as they might be entitled to according to the Workmen's Compensation Law. It was dated July 1, 1930, and operative for one year. The estimated premium was $17,301.20 according to the estimated classified pay roll attached as a rider to the policy. The actual premium would have been $29,277.90 had the policy remained in force for its term. The former sum was paid.

Appellee canceled the policy February 17, 1931, replacing it with another substantially like it. This it had the right to do, but at the cost of short rates. At the short rates, the sum of $5,681.95 was called for, additional to the premium paid in advance. Appellee refused payment, and this action followed.

The sole defense made, and the admitted basis of the judgment, is that the policy was void. This result is claimed because: (1) The making of such a contract was authoriz-ed by Laws 1929, c. 113; and (2) Robert Kelahin, a member of the House of Representatives for the term 1929–30, was interested in the contract as president and a stockholder of appellant's local agency. This is to invoke N. M. Const. art. 4, § 28, which provides: "No member of the legislature shall, during the term for which he was elected, * * * be interested directly or indirectly in any contract with the state, * * * which was authorized by any law passed during such term."

Appellant's contention is as single and as simple as that of appellee. It is that the original authority for this contract is found in Laws 1927, c. 100, not in the statute mentioned. The earlier statute was entitled "An Act to Extend the Provisions of the Workmen's Compensation Law to Employees of the State Highway Department." It provided:

"The State Highway Commission is hereby authorized to take out insurance policies with some insurance company authorized to do business in New Mexico to insure to each employee of the Highway Department engaged in extra hazardous occupations who may be injured by accident arising out of and in the course of his employment or in case of his death being directly caused thereby, then to his dependents, compensation in the manner and amount and at the times provided by law for compensation to injured workmen under the Workmen's Compensation Law.

"The premiums on such policies shall be paid out of the State Road Fund and dis-

'bursed as other monies in said fund are disbursed." Section 1.

At that time the "Workmen's Compensation Law" of this state was Laws 1917, c. 83, as somewhat amended by Laws 1919, c. 44, and by Laws 1921, c. 184.

The legislative product of 1929, for participation in which by Mr. Kelahin the validity of this contract is challenged, is really the work of amendment and collation. The 1917 act and the 1927 act are brought together; the latter being included as section 26 of the re-enactment, with a single verbal change ("extra hazardous" to "hazardous"), not thought material here. The amendments of the text of the 1917 act worth mentioning in this connection enlarge the class of "employers" affected by the act to include "the state and each county, city, town, school district, drainage, irrigation or conservancy district, and public institution and administrative board thereof" (Laws 1929, c. 113, § 2), and enlarge the list of "extra-hazardous occupations and pursuits" to include "road building and construction" (section 10), which is defined as "any work having to do with the building, alteration, maintenance, repair or construction of any public highway, road, passage, thorough-fare or alley" (section 12 (q).

If the 1927 act authorized the highway commission to take out a policy protecting the classes of employees covered by this 1930 policy, appellee claims no merit for its defense. Its contention is that no such coverage was authorized until the 1929 re-enactment expressly included "road building and construction" as one of the "extra-hazardous occupations and pursuits."

It is stipulated that the eleven classes of employees listed· in the policy rider above mentioned are those which the parties intended should be, and so were, insured. The largest class is designated:

*"Street or Road Construction*—All operations including paving or surfacing and drivers, chauffeurs and their helpers—excluding tunnelling; bridge building where floor is more than 10 feet above ground or the span exceeds 20 feet; or quarrying or stone crushing except when ·conducted adjacent to and exclusively for one specific job No. 6042."

The estimated premium for this class was $15,480. All of the other classes were comparatively small in number and premium expense. One was described as "bridge building—metal." The premium was $84. As the case is here presented, decision will turn on appellee's contention that the contract made was not authorized by the 1927 act.

The original authority (Laws 1927, c. 100; 1929 Comp. St. § 64-341) contemplates the procurement of insurance for such only of the highway employees as are "engaged in extra hazardous occupations." The present authority (Laws 1929, c. 113, § 26; 1929 Comp. St. § 156-126) differs only in the somewhat lesser requirement that they be "engaged in hazardous occupations." No point is made of that difference. The point urged is that, since 1929, "road building and con-

struction" has been an extrahazardous oc-cupation, and that formerly it was not.

The term "extra hazardous occupations" is indefinite. In application it calls for the exercise of judgment and the formation of an opinion. So·to classify occupations is highly discretionary. When the duty is imposed upon an administrative board a court will not substitute a classification of its own nor modify that of the board, except perhaps in case of arbitrary or bad faith action. Of this no claim is here made. This is the substance of appellant's contention. The proposition is one well settled in law, and appellee does not seriously question it.

It is argued, however, on behalf of appellee that the term was not here employed as one of uncertain application, that it left no discretion in the commission in the matter of classification, but that it had reference to and made applicable a standard of "extra hazardous" or rather an exclusive enumeration of "extra hazardous occupations" found in the Workmen's Compensation Act proper, then Laws 1917, c. 83, § 10. Comparing that enumeration with the classification of employees in the rider, appellee finds but one employment common to both, that of bridge builder. He contends that, as to all others, no authority existed for their insurance under the 1927 act.

It is stipulated that prior to the passage of the 1929 act three similar policies had been taken out by the commission, and that under those policies, as well as under this, losses had been paid by the respective insurers. If appellee is right, those policies were all void,

many thousands of dollars have been unlawfully expended for premiums, and no compensation was collectible under them.

The way to reach this somewhat disturbing result is thus pointed out:

(1) The Workmen's Compensation Act proper and the act of 1927 are obviously in pari materia. Both the body of the act and the title so disclose. There being in the former a complete definition of "extra-hazardous occupations and pursuits," the Legislature necessarily meant the same thing by the term "extra hazardous occupations" used in the latter. And this is particularly obvious from the purpose expressed in the title, "to extend the provisions" of the Workmen's Compensation Act proper to employees of the commission.

(2) Statutes are so to be construed as to harmonize them with existing law. It is not readily to be granted that the Legislature intended to place on the state itself a greater burden than it placed on private employers. It did this, if it placed on the commission the duty of insuring its employees engaged in road building and construction, while not placing the same duty on private employers in the same business.

(3) By amending the enumeration to include "road building and construction" in 1929, the Legislature interpreted the former laws as not including that "occupation or pursuit" as extrahazardous.

The third of these contentions is of minor importance. In view of our further conclusions we shall not mention it again.

In order to invoke the second, appellee is forced to construe Laws 1927, c. 100, as mandatory. It contends that the phrase "is hereby authorized to take out insurance policies" should be held to mean "is hereby required to take out insurance policies." We are not impressed with the contention. It seems plain to us that the statute merely enables the commission to insure its employees if it thinks proper. It is equally plain that no liability for compensation is imposed upon the commission or upon the state's moneys under its control. The liability is express and goes merely to payment of premiums from the road fund in case the commission in its wisdom or discretion shall have seen fit to take out policies. The 1929 re-enactment made no change in these respects.

So it cannot be said that the statute places a greater burden on the state than on private employers. Of its own force, it imposes no burden on the state. The matter comes merely to this: If the commission acts at all, and selects solvent insurers, and is liberal in its classification of "occupations" as extrahazardous, some of its employees may enjoy the benefits of compensation who would not if privately employed.

Now as to the first of the stated contentions: We readily grant that the Compensation Act proper and the 1927 act are in pari materia. The latter unquestionably refers to the former. It makes it plain that, if the commission shall insure its employees and they shall be injured, they are to be compensated "in the manner and amount and at times" as provided by the Compensation Act proper. No doubt, as indicated by the title, many questions to arise under the 1927 act have been and will be determined by reference to the 1917 act.

It is equally plain that many of the provisions of the Compensation Act proper are not applicable to the highway commission or its employees. Some distinctions, and perhaps sufficient, we have already pointed out.

Granting that the legislative purpose was to extend to employees of the highway department all *applicable* provisions of the Compensation Law, or even all provisions not clearly inapplicable, we still conclude that section 10 of the 1917 act which enumerates the "occupations and pursuits" to be deemed extrahazardous, and section 12, which defines the terms employed in section 10, are not applicable provisions.

In the first place, it would have been so easy to make these sections expressly applicable that the legislative failure to do so is somewhat significant.

In the second place, contemporary construction has been otherwise, not only by the highway commission, but in the courts. The practical consequences of invalidating contracts long relied on by many persons and performed on all sides are not trivial. The courts will not so act in a doubtful case.

In the third place, it is difficult to believe that the Legislature of 1927 intended the comparatively inconsequential result claimed— that the commission's bridge builders, and they only, should or might have insurance.

Finally, appellee's contention is based on a false conception. It is demonstrably untrue that "extra hazardous occupations" in the 1927 act means the same thing as "extra-hazardous occupations and pursuits" in the 1917 act. All agree that the former has reference to the particular duty or task of the employee. The latter as plainly refers to the business or undertaking of the employer.

By the 1927 statute the highway commission, which may here be considered as an administrative arm of the state engaged in the business or undertaking of road building, is authorized to take out insurance for such of its employees as it deems engaged in extra hazardous duties or tasks.

By the 1917 act persons and corporations (employers) engaged in certain named "extra-hazardous occupations or pursuits" are made liable to compensate their employees for injuries and to give security therefor.

In the one case the criterion is the nature of the work being done by the employee. In the other the test is the business being carried on by the employer. We may illustrate this distinction. We recently held that a workman injured while operating gas engines was not entitled to compensation. Not because his particular work was not extrahazardous, but because his employer's business was farming, not an enumerated "extra-hazardous occupation or pursuit." Koger v. A. T. Woods, Inc., 38 N. M. 241, 31 P.(2d) 255. So, one injured in building a bridge might be entitled to compensation if his employer's "occupation or pursuit" was bridge building and not if his employer's business was farming. The contrary principle applies under the 1927 act, according

to appellee's own contention. Though the commission's occupation or pursuit is road building, appellee insists that it may take out insurance for its few bridge builders only.

It is quite possible, though entirely speculative, that the Legislature of 1927 did not have this distinction clearly in mind. In actual fact it may have assumed that it was yielding to employees of the state substantially what it had already granted to private employees. We are not permitted to indulge such a presumption. It is for us to presume that the Legislature was informed as to existing law. But, if we did presume the former, it would not help appellee. An enumeration of businesses in which employees are entitled to the benefits of compensation without regard to their particular duties or tasks simply cannot serve as the test when the matter to be determined is the hazardous nature of the particular duty or task.

■■ Concluding as we do that sections 10 and 12 of the 1917 act are foreign to the 1927 act, we cannot escape the result that a discretion resided in the commission to classify its employees according to the hazardous or nonhazardous character of their work. Thus the defense fails.

The judgment will be reversed, and the cause will be remanded with a direction to award appellant the peremptory writ. It is so ordered.

SADLER and ZINN, JJ., concur.

BICKLEY, Justice (dissenting).

The majority have set up some of the arguments against the result they reach and have

answered them to their and not to my satisfaction.

The contract in question is controlled by the provisions of the law existing at the time the contract was entered into. The statute is chapter 113, Laws 1929, "An Act Providing for Compensation of Workmen Engaged in *Certain Occupations*," etc.

The question is, What are the "certain occupations" for which compensation is provided?

Since the argument of the majority would seem to bring them inevitably to the conclusion that, under the present existing Workmen's Compensation Law, the state highway commission now has authority and discretion to make its own determination of what are extrahazardous occupations, and that the commission is not limited to the classification of extrahazardous employments "named or described" in the act, we first examine the argument from the standpoint of the provisions of the present law. They say: "In order to invoke the second, appellee is forced to construe Laws 1927, c. 100, as mandatory. It contends that the phrase 'is hereby authorized to take out insurance policies' should be held to mean 'is hereby required to take out insurance policies.' We are not impressed with the contention. It seems plain to us that the statute merely enables the commission to insure its employees if it thinks proper. It is equally plain that no liability for compensation is imposed upon the commission or upon the state's moneys under its control. The liability is express and goes merely to payment of premiums from the road fund in case the commission in its wisdom or discretion shall have seen fit to take out policies. The 1929 re-enactment made no change in these respects."

We think the majority have overlooked some of the amendments to the 1917 Workmen's Compensation Act (Laws 1917, c. 83). From the foregoing quotation it appears that they assume that "no liability for compensation is imposed upon the commission or upon the state's moneys under its control."

By section 2 of the 1929 act "the state * * * employing as many as four workmen in any of the extra-hazardous occupations or pursuits *hereinafter named or described* * * * shall become liable to, and shall pay to any such workman injured by accident arising out of and in the course of his employment in any such occupation and pursuit."

It has been strongly argued in this court in a number of cases that, since the state through its Legislature has assumed this liability, it has impliedly consented to be sued by a party seeking to enforce such liability. We have declared that this contention is unsound. New Mexico State Highway Department & Commercial Casualty Insurance Company v. Bible, 38 N. M. 372, 34 P.(2d) 295, citing Dougherty v. Vidal, 37 N. M. 256, 21 P.(2d) 90.

The fact that the state may not be sued, however, does not destroy this self-imposed liability to pay compensation to its injured employees engaged in "certain occupations."

Thus finding that the state "shall become liable to, and shall pay" to its employees injured by accidents arising out of and in the course of his employment, "in any of the extra-hazardous occupations and pursuits *here-*

*inafter named or described,"* it is but natural that the Legislature should provide a means of meeting its liability if and when it should attach. To that end it is provided in section 26, c. 113, Laws 1929, that:

"The State Highway Commission is hereby authorized to take out insurance policies with some insurance company authorized to do business in New Mexico to insure to each employee of the Highway Department engaged in hazardous occupations who may be injured by accident arising out of and in the course of his employment or in case of his death being directly caused thereby, then to his dependents, compensation in the manner and amount and at the times provided by law for compensation to injured workmen under the Workmen's Compensation Law.

"The premium on such policies shall be paid out of the State Road Fund and disbursed as other moneys in said fund are disbursed."

We cannot assume that the state has assumed a liability which it does not intend to discharge. The fact that it has made provision for discharging a liability to its most numerous group of employees and has not made specific provision to meet its obligations to other groups of employees does not throw any light on the question.

Since the state is defined as an "employer" under the act, and has assumed a liability to pay, there seems no reason to suppose it was intended by section 26 to do more than make provision to discharge its liability. That employees of the highway commission are employees of the state cannot be questioned.

Looney v. Stryker, 31 N. M. 557, 249 P. 112, 50 A. L. R. 1404.

The phrase "extra-hazardous occupations" in section 2 of the act has a definite meaning. It means such extrahazardous occupations as are therein "named or described." It is for injuries of its employees arising out of and in the course of *such occupations* that the state has agreed to pay compensation as provided in the Workmen's Compensation Act.

The majority ignores the rule of statutory construction governing such situations as follows: "In the absence of anything in the statute clearly indicating a contrary intent, where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the same sense throughout; and where its meaning in one instance is clear, this meaning will be attached to it elsewhere." 59 C. J. Statutes, § 597.

Having found in section 2 of the Workmen's Compensation Law that "extra-hazardous occupations" are limited to those "herein named or described," it seems to us to be straining a point to say that in one part of the act extrahazardous employment means something different from the same words elsewhere employed and definitely defined.

The majority say that appellant's contention is that the authority for the contract in question is found in Laws 1927, c. 100, not in the present statute. They accept this contention as sound without giving any reasons therefor. We assume that this acquiescence must be upon the theory that the re-enactment of a statute in the same or substantially the

same language as the original statute is considered as a continuance of the language so repeated and not a new enactment. That is a well-recognized rule of statutory construction, but inapplicable in the case at bar. It is true that section 26 of the present statute is substantially in the same language as chapter 100, Laws 1927. However, the intention of the Legislature in enacting that chapter is manifest in the title, "An Act to Extend the Provisions of the Workmen's Compensation Law to Employees of the State Highway Department." In effect, the provisions of this enactment were written into the Workmen's Compensation Act just as though it had been added as a new section to chapter 83, Laws 1917. The Legislature of 1929, when it rewrote the Workmen's Compensation Law and put it out as chapter 113 of the acts of that session, comprehended that it occupied no position of isolation and in fact incorporated it as section 26 of that law. So viewed, the rules of statutory construction heretofore adverted to would apply with equal force when considering the meaning of the phrase "extra-hazardous occupations" when used in different parts of what must be considered as virtually one law governing workmen's compensation.

Furthermore, we may not be content to view the language of chapter 100, Laws 1927, as having been repeated in section 26, c. 113, Laws 1929, without considering its context. When we view said chapter 100, Laws 1927, as virtually an amendment to chapter 83, Laws 1917, our inquiry should be whether said chapter 83, Laws 1917, has been re-enacted in substantially the same language. The argument of the majority contained in the quota-

tion heretofore given, would be more plausible but for the 1929 amendment which expressly makes the state liable to pay compensation under the act, so, if section 26 has a meaning in its new setting, different from the same language in its former setting, it cannot fairly be said that repeating the same language is no more than a continuation thereof from the older enactment.

It is one of the rules of statutory construction that a re-enacting statute must be construed in harmony with intermediate amendments of the original statute. 59 C. J. "Statutes," § 624. Finding chapter 83, Laws 1917, amended in 1929, so as to cast a new light upon chapter 100, Laws 1927, and a new legislative product resulting, we deem the product more than a re-enactment, so that we cannot accede to appellant's contention that chapter 100, Laws 1927 affords authority for the contract in question which was executed in 1930. Said chapter 100, Laws 1927, had dropped out of the picture when the contract was entered into.

We do not place much store by the argument that the Legislature of 1927 intended a comparatively inconsequential result as measured by the appellant's failure to see more in the original Workmen's Compensation Law than the commission bridge builders as beneficiaries of insurance policies. Doubtless some of the employees of the highway commission were also engaged in "workshops where machinery is used" and in "quarries" as defined as a place where stone, clay, sand, gravel, or other solid material is extracted from the earth, and in "engineering works" as defined to cover, among other things, "any work in the

construction, alteration, extension, repair or demolition of a bridge, jetty, dyke, * * * underground conduit * * * laying, repairing or renewing underground pipes and connections, * * * and any work in grading or excavating where shoring is necessary or power machinery or blasting powder, dynamite or other high explosives are in use," and the general provision, "all employment wherein a process requiring the use of any dangerous explosives or inflammatory materials is carried on," would doubtless have employed some phases of "road building and construction."

However that may be, it would not be proper for the courts to supply an authority not given or to broaden a given authority.

Being unable to yield acquiescence to a construction deemed unsound, I dissent.

HUDSPETH, Justice.

I concur in this dissent.