127 P.2d 242

**BOYD v. VILLAGE OF WAGON MOUND et al.**

**No. 4690.**

Supreme Court of New Mexico.

June 12, 1942.

Wilson & Wright, of Raton, for appellant.

Noble & Spiess and E. R. Cooper, all of Las Vegas, for appellees.

MABRY, Justice.

This appeal involves an interpretation of Chapter 20, Laws of 1935, Sec. 90-

5101 N.M.Supp.1938, which, in part, provides: "Any incorporated city or town having a regular organized volunteer fire department may take out for the protection of such volunteer firemen an accident policy or policies, in some accident insurance company authorized to do business in the state of New·Mexico, and pay the premium therefor out of the fire fund of such incorporated city or town. Such policies shall provide for the payment to such volunteer firemen of *suitable sums* for injuries, and a gross sum of not less than $2,000 in case of death." (Emphasis ours).

Appellant Boyd brought suit against the village of Wagon Mound, the trustees thereof, and the United States Fidelity and Guaranty Company, seeking damages in the sum of $7,500 on account of an accident in which appellant, while serving as a member of the volunteer fire department of the village, was injured. The insurance company, made defendant with appellees, discharged its obligation under its policy and is not involved in the appeal. The complaint alleges that by virtue of the accident appellant suffered a broken vertebra in the region of the neck by which he was confined to the hospital, that he was required to pay hospital and medical expenses therefor and the said village had provided no insurance to cover this and other contingencies. It is alleged that the village did take out a policy of insurance with the said Fidelity and Guaranty Company but complains that the insurance so provided was not in "suitable sums" since it did not provide for medical, surgi-

cal and hospital compensations for any such fireman who might become injured, and in addition, that such policy did not provide compensation ·for partial disability nor for physical pain and mental anguish. The policy does provide, in addition to death benefits, payment of $15 per week during disability for a maximum period of 52 weeks.

In substance, the complaint charges that the insurance provided by the village is not "suitable" insurance, and seeks damages against the village and its trustees in an action sounding in tort upon the ground that the said municipality failed to provide the kind or amount of insurance which appellant contends is required by the statute.

Appellees, the village and its trustees, demurred to the complaint on the ground that it failed to state facts to sufficiently constitute a cause of action, raising, in brief, the question of whether a mandatory duty rested upon appellees to secure other additional insurance from that actually secured by them. The demurrer was sustained, plaintiff elected to stand upon his complaint and an appeal was taken from the order of the court sustaining the demurrer and dismissing the complaint.

Appellant's case is predicated upon the theory that the act in question is mandatory and required the trustees of the village of Wagon Mound to procure for the benefit of its volunteer firemen not only the insurance actually secured but insurance also to compensate for medical, surgical

and hospital expense and for physical pain and anguish.

As we understand appellant's position, it is that whether or not the kind and character of insurance so procured for his benefit and for the benefit of others in the volunteer firemen's organization is of a "suitable" sum becomes a fact and should have been submitted to the court or jury as the triers of fact; in other words, appellant contends that the village trustees under the said act have no discretion in determining the amount and character of insurance to be secured and the disabilities or elements of hazard to be covered thereby.

We are not advised what appellant concedes to be "suitable" insurance. At one point in the brief, he urges, as we understand his argument, that it follow closely the character and amount of insurance provided by New Mexico's Workmen's Compensation Act, Comp.St.1929, § 156-101 et seq., in force at the time of the enactment of the statute in question; and at another place appellant speaks of appellees' being bound by the legislative determination of what it means when it employs the term "suitable sums", by what "the legislature, in its wisdom, contemplates as suitable", and then cites definitions from various authority where the terms "suitable", "good and sufficient", "fitting", "appropriate", "adaptive", "convenient", "necessary", "proper" and "reasonable" are defined; but none of said terms seem to have been, by any cases cited, defined under circumstances involving the question we have here.

If the New Mexico Workmen's Compensation Act was in the minds of the legislators as the kind of coverage they would designate "suitable" as to "sums" allowed for accidental injuries, they failed to say so. Moreover, the application of such insurance to appellant's case would prove quite unsatisfactory and ineffective. Compensation under such compensation act is based upon earnings and days employed by the injured workman prior to injury. Certainly this and many other features of that act would have to be substantially modified to appropriately meet the situation of a voluntary and unpaid "employee" of municipalities.

Appellees contend that the legislature having failed to fix or name the exact kind and amount of insurance which municipalities may take out for the benefit of such volunteer firemen, and having failed to require insurance for any medical, surgical or hospital expense or compensation for physical pain and anguish, it becomes clear that municipalities are given a broad discretion in determining what insurance they might secure, and that this is a discretion which the courts, under the circumstance of this case, cannot disturb.

The act in question is not armed with any weapon of compulsion. No municipality is actually required to take out any insurance in any amount for such purposes. Notice the word "may" is em-

ployed in the act. We know that the word "may" is, under many circumstances, to be construed as "shall". Lorenzino v. State ex rel. James, 18 N.M. 240, 135 P. 1172; People v. Commissioners of Highways, 130 Ill. 482, 22 N.E. 596, 6 L.R.A. 161; McQuillan on Municipal Corporations, 2nd Ed., Sec. 392. But we see no reason for so construing the word here; and we find good reason for not so construing it. See State v. State Highway Commission, 38 N.M. 482, 487, 35 P.2d 308, 311, where the term "is hereby authorized to take out insurance policies" is held not mandatory.

It is obvious that the premiums upon any such insurance that might be so secured are to come from the respective municipal fire funds. For example, it is provided by Sec. 71-127, N.M.Stat.Ann. 1929 Comp., that certain fees from domestic and foreign insurance companies qualifying to do business in this state shall be paid to the superintendent of insurance. Chap. 102, Laws of 1935, in making provision for the distribution of collections made by the department of insurance, provides that: "All monies received for fees, licenses and taxes from fire insurance companies shall be paid daily to the state treasurer and by him credited to the 'fire protection fund' * * *." There is further provision made in this act for the distribution by the state treasurer of all money in the said "fire protection fund" to each incorporated city, town and village which has for at least one year prior to such distribution maintained an official fire department possessing fire apparatus and equipment in serviceable condition, etc., in certain proportions, based upon the population of such cities, towns and villages.

We find the further provision in Chap. 102, Laws of 1935, to the effect that the money so distributed for the fire protection fund to such cities, towns and villages "shall be expended only for the maintenance of such fire departments and the purchase and repair of fire apparatus and equipment", etc. The "fire fund" heretofore mentioned and referred to in said Sec. 90-5101, supra, is made up of the monies which come from distribution of the "fire protection fund"; and, until the enactment of said Chap. 20, Laws of 1935 (Sec. 90-5101), the use of this money by the municipalities was restricted to the purchase and repair of fire apparatus and equipment. So, in making provision for carrying insurance for the benefit of such persons as appellant, under Chap. 20, Laws of 1935, it was done through amendment to the earlier act, and thus the money so distributed might then be used as well to pay the premiums on policies of insurance providing suitable sums for injuries of voluntary firemen.

Appellees urge, and with much reason it seems to us, that it could scarcely be contended with consistency that any city, town or village would be required to provide insurance in any specified sum or covering any of the specified injuries or ailments which appellant feels should be covered, any more than it could be argued

that the law requires the purchase of any particular kind or quantity of fire apparatus or equipment.

We have seen that the fire fund from which premiums on the policies of such insurance are payable comes from the fees. or licenses paid in by fire insurance companies, exclusively; and the amount received by any city, town or village is not fixed or determined but is uncertain and fluctuating, depending first upon the income as a whole, and then upon the population at the time, of the particular city, town, or village. The municipality of Wagon Mound may not have felt itself able to provide accident insurance in the sums which, to appellant, might seem "suitable". There might be considerable diversity of opinion as to what portion of the fire fund allocated to fire-fighting equipment and the payment of premiums on such policies of insurance should be taken for insurance. purposes and, to that extent thus reducing the fund available for other uses permitted.

Whether other additional features omitted from the policy would be relied upon as essential to a compliance with the statute had his case involved more in the way of injury, we do not know. Plausibly, it would seem, had appellant suffered the loss of a leg, or an eye, it could have been as consistently urged that it was negligence

on the part of the village to fail to cover such items in·the lists of hazards insured against, if such were not covered. It would be difficult to know just where to stop. Certainly the ability of the city authorities to purchase insurance must be limited by the funds available to pay therefor. We can conceive of a policy of insurance so desirable from appellant's standpoint and because of its wide coverage that the cost in premiums might be wholly prohibitive in many small villages.

Certainly, the legislature did not intend that the municipalities must secure insurance entirely uncontrolled by any discretion of their governing bodies as to what they deemed desirable or within the purchasing power of the funds available.

We hold that appellees were not required to secure any insurance in any amount, and that when they did employ this method of protection for appellant and others, they had a discretion as to the hazards and injuries against which they would insure as well as the amount of such insurance. The assignments are without merit.

Finding no error, the judgment is af·firmed, and it is so ordered.

BRICE, C. J., and ZINN, SADLER, and BICKLEY, JJ., concur.