405 P.2d 924

The CITY COMMISSION OF ALBUQUERQUE, New Mexico, and Archie Westfall, Sam Brown, Luther Heilman, Ralph Trigg and Emmanuel Schifani, Members of the City Commission, Plaintiffs in Error,

v.

STATE of New Mexico upon the relation of Homer P. NICHOLS, Defendant-in-Error,

John McMullan, William M. Campbell, Jr., Jack Stahl, Don Weagley, Lillie Bailey, Peter F. McCanna, Theodore Van Soelen, I. T. Williams and Allen D. Herhold, Intervenors.

No. 7813.

Supreme Court of New Mexico.

Sept. 20, 1965.

Hannett, Hannett & Cornish, Frank L. Horan, Albuquerque, for plaintiffs in error.

Grantham, Spann & Sanchez, Albuquerque, for defendant in error.

CHAVEZ, Justice.

Writ of error was issued by this court directed to the Honorable John B. Mc-Manus, Jr., district judge of the second judicial district for Bernalillo County, New Mexico. The writ of error issued as the result of an order granting a peremptory writ of mandamus commanding that plaintiffs-in-error provide, within 30 days from January 18, 1965, for an election to permit the qualified voters of the city of Albuquerque to vote for or against the municipal

ordinance, which provides for a 1¢ per gallon tax on gasoline sold within said City, and to make all necessary arrangements and provisions for the holding of said election as required by law.

The proceedings in the district court originated on January 22, 1965, with the filing of a petition by defendant-in-error Homer P. Nichols, hereinafter referred to as "Nichols," against plaintiffs-in-error, hereinafter referred to as the "City," praying for an alternative writ of mandamus. On said date an order was entered granting the alternative writ of mandamus and the writ issued, returnable on January 29, 1965. The alternative writ alleged that on January 18, 1965, there was filed with the City petitions signed by in excess of 24,500 qualified voters of Albuquerque, requesting an election to permit the qualified voters to vote for or against the ordinance which provided for said gasoline tax; that the petitions were in all respects proper and filed in accordance with the laws of New Mexico and the charter of the City; that the City, through its employees, publicly announced that any one wishing to vote "for" or "against" the ordinance would have until January 22, 1965, to file petitions for an election; and that petitioners who filed petitions on January 18, 1965, were relying, among other things, upon such representations.

The trial court, in its order granting the alternative writ of mandamus, directed the City to provide for an election within 30 days from January 18, 1965. The trial court concluded that, under the laws of New Mexico and the charter of the City, it became the clear duty of the City to call an election within 30 days from the date of the filing; that the City, at a meeting held January 19, 1965, refused to call an election; and that there was no speedy and adequate remedy at law whereby Nichols' rights and those of 24,500 voters, who signed the petitions, can be enforced.

On January 28, 1965, the City filed an "Answer to Petition for Alternative Writ of Mandamus," which was accepted by the court as a response to the alternative writ of mandamus. The answer admitted receiving certain petitions on January 18, 1965, and admitted the passage of the ordinance; admitted that the City refused to call an election and submit the matter to a vote, but denied that such refusal was unlawful or that they made any misrepresentations; alleged that the petitions for referendum do not contain the signatures of 20% of the qualified voters in the City; and that the petitions were not filed within the time provided by law.

On January 28, 1965, a motion to intervene was filed by John McMullan and others, to which was attached a complaint in intervention alleging that the petitions for referendum were not timely filed and that said petitions contained an insufficient number of signatures of qualified voters.

The trial court allowed the intervention and the complaint was filed.

At the close of Nichols' case, the City moved to quash the writ on the ground that the petitions were not timely filed, which motion was denied.

The trial court's findings of fact and conclusions of law appear in the order and peremptory writ of mandamus entered February 1, 1965, as follows:

"That Homer P. Nichols, relator herein, is now and has been at all times material hereto a citizen and qualified voter of the City of Albuquerque, Bernalillo County, New Mexico, and is beneficially interested in the relief being sought herein; and,

"That the respondent City of Albuquerque is a municipal corporation existing under the laws of the State of New Mexico; the respondents Archie Westfall, Sam Brown, Luther Heilman, Ralph Trigg and Emmanuel Schifani are the duly elected and acting Commissioners of the said City; and

"That on January 18, 1965, there were filed with the respondent City Commission petitions signed by in excess of 24,500 presumed qualified voters of the City of Albuquerque, New Mexico, petitioning said Commission to provide for an election to permit the qualified voters to vote for or against an Ordinance which provided for a gasoline tax of one cent (1¢) per gallon on gasoline sold within the municipality, a copy of said Ordinance being attached to the petition herein as 'Exhibit A' and adopted as a part hereof; and said petitions were in all respects presumed valid and timely filed in accordance with the statutes of the State of New Mexico in such cases made and provided, and in accordance with the charter of the City of Albuquerque; and

"That on or about the time the described Ordinance became effective, the respondent City Commission, by and through its duly appointed and acting employees and representatives, publicly announced to the citizens and qualified voters of the City of Albuquerque that anyone wishing to vote for or against the Ordinance would have until January 22, 1965, to file petitions for an election; and the petitioners, who filed the hereinabove described petitions on January 18, 1965, were relying, among other things, on the described representations so made by the respondents; and

"That under the laws of the State of New Mexico and the charter of the City of Albuquerque and upon the filing of the described petitions, it became the clear duty of the respondent City Commission to call an election within thirty (30) days from the date of filing; and

"That notwithstanding the hereinbefore representation made by the respondent Commission as to the date of filing, and contrary to the laws of the State of New Mexico and to the charter of the City of Albuquerque, the respondent City Commission at a meeting held on January 19, 1965, refused to call an election and submit the matter to a vote of the people of the City of Albuquerque; and

"That there is no plain, speedy and adequate remedy in the ordinary course of the law whereby relator's rights and those of 24,500 voters, who signed the hereinbefore mentioned petitions, can be enforced; and

"WHEREAS, by Order of this Court duly issued and made it was ordered that a peremptory writ of mandamus issue to you, and each of you.

"THEREFORE, THE COURT COMMANDS you, and each of you, that you provide, within thirty (30) days from January 18, 1965, for an election to permit the qualified voters of the City of Albuquerque, New Mexico, to vote for or against the municipal ordinance which provides for a one cent (1¢) per gallon tax on gasoline sold within said City, and that you make all arrangements and provisions for the holding of said election as are required by law."

Under their point I, the City contends that the peremptory and alternative writs of mandamus were improvidently issued because there was no clear legal duty incumbent upon them to perform that which was ordered, and that the court did not have jurisdiction to issue the writ. Subsection (a) under this point is that the petitions filed with the city clerk on January 18, 1965, were not filed within the time prescribed by the Albuquerque city charter and the laws applicable thereto.

The ordinance in question was adopted on December 15, 1964, and § 11 thereof declares it to be an emergency ordinance, and that it shall take effect forthwith on its passage and publication. Section 14–10–13, N.M.S.A., 1953 Comp., and Albuquerque city charter Art. III, § 2(a), are as follows:

"(a) No act, ordinance or resolution or order of the governing body of the city shall, unless it be declared an emergency measure on the ground of urgent public need, go into effect until thirty [30] days after its passage. If at any time within the thirty [30] days, a petition signed by twenty [20] per cent of the qualified voters is presented to the governing body, asking that the measure in question be submitted to a vote of the people for adoption or rejection, said measure shall not go into effect until an election shall have been held as petitioned. It shall be the duty of the governing body of the city to provide

for such election within thirty [30] days of the filing of the petition."

Section 14–10–14, N.M.S.A., 1953 Comp., and Albuquerque city charter, Art. III, § 3(a) (b), read:

"(a) At such an election the ballot shall contain the text of the measure in question, and below the same phrases 'for the above measure' and 'against the above measure,' followed by spaces for marking with a cross the phrase desired. If a majority of the votes cast are against the measure, it shall be of no effect. If a majority of the votes cast be not against the measure it shall go into effect forthwith.

"(b) If a measure be declared an emergency measure, as provided above, it shall go into effect at once, subject to repeal by an adverse majority at the recall election."

Sections 14–10–13 and 14–10–14, supra, were originally enacted as Laws 1919, Ch. 121, Art. 3, §§ 2, 3. These provisions remain identical to the original enactments of 1919. ·

Under § 14–10–13, supra, a non-emergency ordinance does not go into effect until 30 days after its passage, and during said period qualified voters may petition for a referendum election. If a petition signed by the required number of voters is filed, then the measure is not effective until an election is held. Section 14–10–14(b), supra, provides that emergency measures shall go into effect at once, subject to repeal by an adverse majority at the recall election. No time limit is set out for the filing of referendum petitions on emergency measures.

■ Provisions reserving to the people the power of initiative and referendum are to be given a liberal construction to effectuate the policy thereby adopted. Albuquerque Bus Co. v. Everly, 53 N.M. 460, 211 P.2d 127; 5 McQuillin 3d Ed., Municipal Corporations 246, § 16.51; 62 C.J.S. Municipal Corporations § 451b, page 870.

■ We do not believe that §§ 14–10–13 and 14–10–14, supra, impose a limitation period on the time within which petitions must be filed to referendum an emergency ordinance, but sets out a limitation period under § 14–10–13 within which petitions must be filed to suspend a non-emergency ordinance.

■ We are of the opinion that § 14–10–14, supra, contemplates the referendum of emergency measures, but it does not provide the time within which the petitions must be filed. Reading the two statutes together there is merit to the view that the 30-day period referred to in § 14–10–13 also applies to the emergency provision in § 14–10–14. This is evident, we think, because § 14–10–14 refers to the election mentioned in § 14–10–13 by saying: "(a) At such an elec-

tion the ballot shall contain the text of the measure in question, * * *" and specifically refers to § 14–10–14 by the wording. "(b) If a measure be declared an emergency measure, as provided above, it shall go into effect at once, subject to repeal by an adverse majority at the recall election."

From the wording of these provisions we do not believe the legislature intended emergency measures to be subject to referendum for an indefinite period of time. We also believe that the only reason emergency measures were excluded from § 14–10–13, supra, was because the legislature intended the effective dates to be different and not because emergency measures could be repealed at any time. That this reasoning is correct seems to be emphasized by the purpose of an emergency measure, which is to have an early effective date. Further evidence of this construction appears in § 14–10–13, supra, where the exclusion of emergency measures from that provision is found only in the declaration of the effective date. This exclusion is not found in the next sentence which allows 30 days for the filing of referendum petitions.

We believe that § 14–25–7, N.M.S.A., 1953 Comp., should also be considered in our determination of the time limit to be applied to the petitions under consideration. The pertinent portions of that enactment are:

"All ordinances shall, as soon as may be after their passage, be recorded in a book kept for that purpose, * * *; and all by-laws of a general or permanent nature, * * * shall be published in some newspaper of general circulation in the municipal corporation, * * *; and such by-laws and ordinances shall not take effect and be in force until the expiration of five [5] days after they have been published. * * *"

This provision was first enacted in Laws 1884, Ch. 39, § 25, and is substantially the same today.

Section 14–10–14(b), supra, provides that emergency measures go into effect at once, subject to repeal at the recall election. However, § 14–25–7, supra, provides that all ordinances go into effect five days after their publication. Section 14–25–7, supra, was enacted in 1884 and was in force when § 14–10–14(b), supra, was enacted in 1919.

In interpreting a statute this court may presume that the legislature was informed as to existing law, and that the legislature did not intend to enact a law inconsistent with any existing law or not in accord with common sense or sound reasoning. State ex rel. Maryland Cas. Co. v. State Highway Commission, 38 N.M. 482, 35 P.2d 308; McDonald v. Lambert, 43 N.M. 27, 85 P.2d 78, 120 A.L.R. 250. This court has the duty to construe acts so that all of the acts of the legislature will be operative. State ex rel. Rives v. Herring,

57 N.M. 600, 261 P.2d 442. Statutes should be construed in the most beneficial way of which their language is susceptible to prevent absurdity, hardships or injustice, to favor public convenience, and to oppose all prejudice to public interests. Cox v. City of Albuquerque, 53 N.M. 334, 207 P.2d 1017.

█ In line with our rules of construction we will presume that the legislature, in enacting § 14–10–14(b), supra, was fully aware of § 14–25–7, supra, and that § 14–25–7 was intended to complement § 14–10–14(b) and not conflict with this later enactment. In construing the two provisions together we believe that the emergency measure in question did not take effect until five days after it was published on December 18, 1964. In addition, the ordinance itself provided in § 11 that it "shall take effect forthwith on its passage and publication." The City recognized the applicability of § 14–25–7, supra, because it had the emergency measure published and the City's attorney publicly stated that the 30-day period for referendum began to run five days after publication of the protested ordinance. This gave Nichols 35 days within which to file the petitions and extended the time limit to file the petitions until January 22, 1965. The petitions were filed on January 18, 1965, well within the time limit prescribed by our statutes and the Albuquerque city charter. We believe that this construction of our referendum statute does not unduly strain our rule of liberal construction where referendum statutes are involved.

Under subsection (b) of their first point, the City says that assuming, without conceding, that the petitions were timely filed, the district court had no jurisdiction to order the City to provide for and hold an election, since their duty was to first check the validity of the petitions. The City argues that it is their duty to determine the sufficiency, validity and legality of the signatures on the petitions before calling the election.

█ We find nothing in our statutes or in the Albuquerque city charter which sets forth the duties and obligations of the City in determining the sufficiency of the petitions. The only applicable provision is found in § 14–10–13, supra, which states in part:

" * * * If at any time within the thirty [30] days, a petition signed by twenty [20] per cent of the qualified voters is presented to the governing body, asking that the measure in question be submitted to a vote of the people for adoption or rejection, said measure shall not go into effect until an election shall have been held as petitioned. * * *"

Under this statute the only duty that the City has is to determine if the petitions contain the signatures of 20% of the qualified voters. It is incumbent upon the City to

either deny the referendum, because the petitions lacked the signatures of 20% of the qualified voters, or provide for the election on the basis that the requisite signatures were contained in the petitions.

In the City's answer to the petition for the alternative writ of mandamus they alleged that the petitions for referendum do not contain the signatures of 20% of the qualified voters in Albuquerque. However, on appeal to this court the argument by the City on this point is that, assuming without conceding that the petitions were timely filed, the writ should not have been issued until they first checked the sufficiency and validity of the petitions. This argument on appeal seems to be the true contention of the City, as shown by their statements in the trial court. However, since the City argued both of these related theories in the trial court, even though they failed to plead lack of time, we will consider both.

The City introduced evidence showing that there were approximately 108,619 registered voters in Albuquerque on January 18, 1965, and that there were approximately 125,700 persons living in Albuquerque who were not insane, were over 21 and, therefore, qualified to vote, even if not registered. Nichols objected to both figures as being incorrect and, in turn, introduced evidence to show that there were 80,000 registered voters in Albuquerque on January 11, 1965.

It was stipulated that the petitions contained 24,550 signatures. Nichols introduced a witness who testified that he counted the signatures in the petitions and that he did not count names without addresses, names with lines drawn through them, illegible names, incomplete names and names with addresses outside the City, but that he did not make a determination of whether the signatures were those of registered voters.

On January 28, 1965, 100 names from the petitions were checked to see if they were registered or if the signers lived within the City limits. Several employees of the City had been working for about a week prior to January 28, 1965, checking the validity of the petitions, and testimony was given by Mr. Brito, who was checking the names, that it would probably take several months to check 24,000 names and that one person could check approximately 200 to 300 names a day. The trial court accepted the City's statement that the signature checking was proceeding with diligence. In addition, Nichols introduced evidence to show that approximately 15,000 votes were cast in the October 8, 1963, city election and approximately 19,000 votes were cast in the April 3, 1962, city election.

■ We now consider the City's contention that it was their duty to determine the sufficiency, validity and legality of the petitions. The City relies upon Kiddy v. Board of County Commissioners of Eddy

County, 57 N.M. 145, 255 P.2d 678, to support this contention. We do not consider that Kiddy is authority for the proposition that the City has the duty to conduct the full scale investigation which is contemplated. Kiddy is clearly distinguishable from the case before us. In Kiddy the petition was improper on its face, in that it submitted two propositions as one question. This court held in Kiddy that the County Commissioners had the right to refuse to call an election upon the basis of a petition which was patently deficient upon its face. In the case before us no claim is made that the petitions are deficient upon their face. The only duty imposed upon the City, when presented with petitions sufficient on their face, was the ministerial act of calling the election. Kiddy recognizes that mandamus is proper in such circumstances.

As we read the pleadings, the only question raised by the City is that there are insufficient valid signatures on the petitions. If the City does what it proposes to do under their contention, that it is their duty to determine the sufficiency, validity and legality of the petitions, it would enable the City to make a judicial determination which, under the city charter and the statutes, it has no jurisdiction to make. Our statutes and the city charter are completely silent as to what duties and obligations the city officials have in a situation such as we have before us.

We believe that the problem before us is answered in People ex rel. Wright v. Kelly, 294 Mich. 503, 293 N.W. 865. In Kelly the contention was made that the secretary of state should conduct an investigation and reject all names where there was similarity in handwriting or nonexistent streets, street numbers, wards or precincts. The question there was whether the secretary of state could make an independent investigation and go behind the face of the petition to test the validity of the signatures. The court stated that this depended upon whether the secretary of state was given quasi-judicial or ministerial powers. The court held that the duties of the secretary of state were ministerial only, and that he could not conduct an independent investigation to determine the genuineness of the signatures, and that it was for the legislature and not the court to establish the machinery by which the genuineness of the signatures could be determined.

In Kerley v. Wetherell, 61 Idaho 31, 96 P.2d 503, the court held that, in the absence of authority in the statute, the city clerk was not required or permitted to inquire as to the qualifications of signers, or pass upon the genuineness of statements of electors that they had read and understood the ordinance which they were petitioning to referendum. See also, State v. Perrault, 34 N.M. 438, 283 P. 902.

We, therefore, hold that there is no authority for the City to make the determina-

**448**

tion which they propose, i. e., to determine the sufficiency, validity and legality of the petitions. The trial court having found that the petitions contained names equal to 20% of the "qualified voters" and having ordered the election, nothing remains to be done by the City except to comply.

The order appealed from is affirmed and remanded to the district court with direction that it proceed in a manner consistent herewith.

It is so ordered.

CARMODY, C. J., and MOISE, J., concur.