485 P.2d 967

**S. A. BETTINI, Plaintiff-Appellant,**

v.

**The CITY OF LAS CRUCES, New Mexico,
a municipal corporation, Defend-
ant-Appellee.**

**No. 9178.**

Supreme Court of New Mexico.

May 3, 1971.

Rehearing Denied June 14, 1971.

Garland, Martin & Martin, William L. Lutz, Las Cruces, for plaintiff-appellant.

George Richard Schmitt, Las Cruces, for defendant-appellee.

## OPINION

STEPHENSON, Justice.

Plaintiff-appellant (Plaintiff) filed suit against defendant-appellee (City) for a refund of utility charges exacted by the City in payment of an obligation owing · by Plaintiff's predecessor in title as a condition to furnishing further service. From an adverse judgment, Plaintiff appeals.

In 1965 a mortgage foreclosure suit was pending against Penguin Motor Hotel in which a judgment of foreclosure was entered on November 1, 1965. City had furnished utility services to the motel for which, after some difficulties, it was paid, except for the period from shortly before or after the entry of judgment until December 30, 1965. On that day it filed its lien for such services pursuant to § 14–22–6, N.M.S.A., 1953, in the sum of $628.08. City was not a party to the foreclosure proceedings. On January 4, 1966, Penguin Motel was sold at judicial sale to Plaintiff.

Plaintiff arranged a sale of the motel and, on May 8, 1968, applied for full commercial utility service. City refused to

furnish these services unless and until the delinquent charges were paid in full. Plaintiff, asserting that he did so under duress and protest, paid the charges and filed this suit for refund.

Plaintiff asserts that City has no lien on the motel premises, it having been in some manner adversely affected by the foreclosure judgment or sale. Under the disposition we make of the case a determination of whether there is or is not a lien is not essential. We will assume for purposes of this opinion that City had a valid and subsisting lien.

Section 14–22–1, N.M.S.A., 1953, a part of Ch. 300, Laws of 1965, provides:

"A. A municipality may require a reasonable payment in advance, or a reasonable deposit, for water, electricity, gas, sewer service, refuse collection service or street maintenance.

B. If payment of any price, rent, fee or other charge for water, sewer service, refuse collection, or street maintenance is not made within thirty [30] days from the date the payment is due, the water service may be discontinued, *and shall not be again supplied to the person liable for the payment* until the arrears with interest and penalties have been fully paid." (Emphasis ours)

Section 14–22–6, N.M.S.A., 1953, a part of the same act, provides:

"A. Any charge imposed by ordinance for service rendered by a municipal utility shall be:

(1) *payable by the owner*, personally, at the time the charge accrues and becomes due; and

(2) a lien upon the tract or parcel of land being served from such time.

B. The lien shall be enforced in the manner provided in sections 14–35–1 through 14–35–5 New Mexico Statutes Annotated, 1953 Compilation. In any proceedings where pleadings are required, it shall be sufficient to declare generally for the municipal utility service." (Emphasis ours)

Section 14–22–1(B), supra, limits the right of the municipality to withhold service from " * * * the person liable for the payment * * *." Statutory words are presumed to be used in their ordinary and usual sense. Nunn v. Nunn, 81 N.M. 746, 473 P.2d 360 (1970); State v. Reinhart, 79 N.M. 36, 439 P.2d 554 (1968); Valley Country Club, Inc. v. Mender, 64 N.M. 59, 323 P.2d 1099 (1958). The ordinary person reading the quoted words from § 14–22–1(B), supra, would not ascribe to them a meaning which would include subsequent owners of property who were not themselves obligated to the municipality. We are of the opinion that the ordinary and usual meaning attributable to the quoted words in the context in which they are used is not such that they may be expanded to include subsequent owners.

It is City's position that, even though the utility charges in question were incurred by a predecessor in title, under the holding of this court in State ex rel. Scotillo v. Water Co., 19 N.M. 27, 140 P. 1056 (1914), L.R.A.1915A, 242 (1915) and § 14–22–1(B), supra, Plaintiff was a "person liable" within the meaning of the statute and that City was therefore entitled to withhold service as a means of exacting payment from him. We do not agree.

At the time of the decision in Scotillo, municipalities were given a lien for water rents by the provisions of § 1, Ch. 68, Laws of 1912, subsequently compiled as § 3569, 1915 Code. It was further provided by § 2, Ch. 136 of the Laws of 1909, later compiled as § 3570, 1915 Code, that such liens could be enforced by district court suits. There does not appear to have been at that time any statutory authority for withholding service comparable to § 14–22–1, supra. Thus, when Scotillo was decided, there was no statutory authority to withhold service from the person liable or from anyone else. Rather, this right was grounded upon court decisions in circumstances in which there was a statutory lien comparable to that presently provided by § 14–22–6, supra.

The question then arises as to the interpretation to be placed on § 14–22–1, supra, and whether the result of Scotillo is modified thereby. There would be no question as to the right of the City here, under the decision in Scotillo to exact sums owed for utility services from a subsequent owner, were it not for the subsequent enactment of § 14–22–1, supra.

We are led to our conclusion primarily by an application of the doctrine of *expressio unius est exclusio alterius.* A typical case enunciating and applying the doctrine in New Mexico is Fancher, et al. v. County Com., 28 N.M. 179, 210 P. 237 (1922), Annot., 84 A.L.R. 964 (1933). In Fancher, a statute authorized the board of county commissioners of any county to have an index made of all instruments of record affecting real property. It further provided that the commissioners were authorized to have the index made by the county clerk. The commissioners of Grant County contracted with an outside firm to do this work, and the question was whether or not they were authorized to do so. The court held that they were not. It quoted with approval from 2 Lewis, Sutherland's Stat.Const., page 919, as follows:

" 'Where authority is given to do a particular thing and the mode of doing it is prescribed, it is limited to be done in that mode; all other modes are excluded. This is a part of the so-called doctrine of expressio unius est exclusio alterius.' "

■ Applying that doctrine to this case, when the legislature authorized the withholding of utility service in aid of collecting obligations for such service and then specified that this step could be taken against the persons liable therefor, and failed to authorize withholding service from a subsequent owner, we are led by the application of the doctrine to the conclusion that the legislature did not intend to include the subsequent owner within the purview of the statute. The legislature could easily have done so by the use of simple language.

■ We must presume that the legislature was informed as to existing law, not only statutory law, but common law. City Commission of Albuquerque v. State, 75 N.M. 438, 405 P.2d 924 (1965); State ex rel. Maryland Casualty Co. v. State Highway Comm'n, 38 N.M. 482, 35 P.2d 308 (1934); 50 Am.Jur. "Statutes" § 344. In § 340, it is said:

"In the interpretation of a statute, changes made by the act in the previous state of the law may be given consideration. Indeed, one of the recognized rules of construction of statutes is to look to the state of the law when the statute was enacted in order to see for what it was intended as a substitute,

\* \* \*"

■ Further, we must presume that the legislature, in enacting a statute, intended to change the law as it had theretofore existed. Stang v. Hertz Corporation, 81 N.M. 69, 463 P.2d 45 (Ct.App.1969), aff'd 81 N.M. 348, 467 P.2d 14 (1970); Martinez v. Research Park, Inc., 75 N.M. 672, 410 P.2d 200 (1965). Making these assumptions, giving the words used their ordinary meaning, and declining to read into § 14–22–1 that which is not within the manifest intention of the legislature as gathered from the statute itself [Burch v. Foy, 62 N.M. 219, 308 P.2d 199 (1957)], we conclude that the legislature, by the enactment of § 14–22–1, and by failing thereby to authorize municipalities to withhold service from subsequent owners, intended to modify the result of Scotillo in such fashion that so far as subsequent owners are concerned, service cannot be withheld; but rather, the municipality must rely upon its statutory lien.

City also places reliance upon its ordinances Nos. 9–1–10, regarding water charges, and 9–3–2 relating to gas charges. Ordinance 9–1–10 provides, in pertinent part:

"For failure to pay the city may cut off water from the premises and service

**636**

shall not be restored until all delinquent charges are paid * * * "

The other ordinance contains an identical provision regarding gas, and both provide for liens for nonpayment.

Having held that the present posture of the statutes of New Mexico is such that municipalities are not authorized to withhold utility service from an individual circumstanced as Plaintiff is here, we are precluded from giving an inconsistent effect to the city's ordinances. Section 14–16–1, N.M.S.A., 1953.

■ Finally, Plaintiff complains of a ruling by the trial court to the effect that because there was no statutory authorization therefor, utility charges could not be paid under protest and subsequently recovered. The basic reason for the court's position was its ruling that the City had lawful authority to collect these sums from the Plaintiff in the manner we have described. Whether or not such specific statutory authorization exists does not appear to us to be controlling. Where sufficient pressure or duress is exerted under circumstances sufficient to influence the conduct of a prudent businessman, payment of monies wrongfully induced thereby ought not to be regarded as voluntary. Cadwell v. Higginbotham, 20 N.M. 482, 151 P. 315 (1915); see also Pecos Construction Co. v. Mortgage Investment Company of El Paso, 80 N.M. 680, 459 P.2d 842 (1969); Jaynes v. Heron, 46 N.M. 431, 130 P.2d 29 (1942), Annot., 142 A.L.R. 1191 (1943); Chicago v. Northwestern Mutual Life Insurance Co., 218 Ill. 40, 75 N.E. 803 (1905).

It follows that the judgment of the trial court must be reversed, with directions to withdraw the judgment heretofore entered and enter judgment in Plaintiff's favor for $628.08, together with interest thereon at the legal rate from the date of payment by Plaintiff.

It is so ordered.

TACKETT and OMAN, JJ., concur.