313 P.2d 337

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Max L. MAESTAS, Defendant-Appellant.**
No. 6168.

Supreme Court of New Mexico.

June 27, 1957.

68

David Chavez, Jr., Santa Fe, for appellant.

Fred M. Standley, Atty. Gen., Harry E. Stowers, Jr., Asst. Atty. Gen., Santiago E. Campos, Asst. Atty. Gen., for appellee.

COMPTON, Justice.

Appellant, Max L. Maestas, was found guilty of murder in the second degree for the killing of Cipriano Trujillo January 29, 1955. At the time of the killing, appellant, his wife, and his brother, Felipe Maestas, were at the home of Felipe's estranged wife, Ramoncita Maestas. Felipe either asked or ordered the deceased to leave the house. A struggle between the deceased and Felipe ensued inside the house after the other parties had gone outside. Apparently the only eyewitness to the struggle was Leo Gonzales, son of Ramoncita Maestas by another marriage. Appellant testified that he approached the kitchen door, saw that the deceased had his brother bent backward over a table and that his brother was very bloody. Appellant admitted the killing but contended that the homicide was justified in self-defense, or more definitely stated, in defense of his brother. He testified that he shot the deceased because he feared that otherwise the deceased would have killed his brother.

The refusal of the court to give certain requested instructions is assigned as error. Appellant contends first that the jury went uninstructed as to his lawful right to arm himself for the purpose of defending himself and his brother from any anticipated assault, and that the jury was inadequately instructed on the law in regard to justifiable homicide in defense of another. The basis for this contention is the refusal of the trial court to give appellant's requested instructions 9 and 3.

We are unable to agree with appellant's contention. It is quite true that a defendant is entitled to have his theory of the case submitted to the jury if support-

ed by substantial evidence. It is equally true that upon request a defendant is entitled to have the law declared in reference to the facts of his case, if there is evidence reasonably tending to substantiate it. State v. Jones, 52 N.M. 235, 195 P.2d 1020; State v. Martinez, 30 N.M. 178, 230 P. 379. This general rule is equally applicable where one accused of homicide defends upon the theory that his act was in defense of another. 4 Warren on Homicide § 339. But in this case the appellant's right to arm himself and his theory of defense of another was properly submitted to the jury by the following instructions:

"10. A defense interposed by the defendant is that of defense of his brother Felipe Maestas. You are instructed that under the laws of New Mexico, a brother may do in defense of a brother, what he may do in defense of himself, under the law of self-defense. You are instructed that the rule of law on the subject of self-defense is as follows:

"You are instructed that the rule of law on the subject of self-defense is this: Where a person in the lawful pursuit of his or her business, is assaulted, and when from the nature of the assault there is reasonable ground to believe that there is a design to take his or her life, or to do him or her great bodily harm, and the party attacked does so believe, then the killing of the assailant under such circumstances would be excusable or justifiable, although it should afterwards appear that no injury was intended and no reasonable danger existed. It is enough that there be an apparent danger; such an appearance as to believe that he was in immediate danger of great bodily injury. Upon such appearance a party may act with safety, nor will he be held accountable though it should afterward appear that the indications were wholly fallacious, and that he was in no actual peril.

"The rule in such case is this: What would a reasonable person, a person of ordinary caution, judgment and observation, in the position of the defendant, seeing what he saw, and knowing what he knew, suppose from this situation and these surroundings. If such reasonable person so placed would have been justified in believing himself in imminent danger, then the defendant would be justified in believing himself in such peril, and in acting upon such appearances. And in considering whether the shooting was justifiable on the ground that the shooting was in self-defense, you should consider all the circumstances attending the shooting, the character of the wound and the conduct of the parties at the time and immediately prior thereto, and the degree and nature of force used by the

defendant in making what is claimed to be self-defense, as bearing upon the question whether the shooting was actually done in self-defense, or whether it was done in carrying out an unlawful purpose.

"But the law of self-defense does not imply the right of attack, nor will it permit acts done in retaliation or for revenge, nor can it be invoked by one who himself seeks and is the moving cause of the difficulty in which he takes human life. And it is for you to determine from all the evidence whether the claim of the defendant that he killed the deceased in self-defense is made in good faith or is a mere pretense."

"11. You are therefore instructed that in this case, if you believe from the evidence, or have a reasonable doubt therefrom, that at the time the fatal shot was fired the deceased had Felipe Maestas, the brother of the defendant, Max L. Maestas, over a table and holding him by the throat and choking him, and that it appeared to the defendant, as a reasonable man, under all of the facts and circumstances that the deceased was attempting to choke or kill his brother, Felipe Maestas, or do him great bodily harm and unless you further believe from the evidence, or have a reasonable doubt therefrom, that Felipe Maestas

himself sought and was the moving cause of the difficulty in which the life of the deceased was taken, then the defendant had the right to use such force as would appear reasonably necessary to an ordinary reasonable man under all of the circumstances to prevent or repel such assault upon his brother, even to the extent of taking human life and you will find the defendant not guilty.

\*      \*      \*      \*      \*      \*

"13. You are instructed that under the laws of the State of New Mexico, any person who has reasonable grounds to believe that his brother is about to be unlawfully assaulted by another, or is being unlawfully assaulted by another, has a legal right to arm himself for the purpose of resisting said assault, and such circumstances, if you find such to have existed in this case at the time or immediately prior to the homicide, should in no wise be considered by you to the prejudice of the defendant."

■ It is appellant's contention that the foregoing instructions are too abstract; that they do not direct the jury's attention to the particular facts of the case. However, in construing a charge as to defense of another the usual rule applies, that is, instructions are to be viewed as a whole, and the charge will be held sufficient, if when thus viewed, they adequately cover

every phase of the case raised by the evidence on which the defendant is entitled to have the jury instructed. State v. Beal, 55 N.M. 382, 234 P.2d 331; State v. Martin, 53 N.M. 413, 209 P.2d 525; Chandler v. Battenfield, 55 N.M. 361, 233 P.2d 1047.

■ Viewing the instructions together, the law regarding justifiable homicide in defense of another, is correctly stated, and the law is adequately tied to the particular facts in the case.

Appellant also urges that the court below committed error in not instructing the jury that homicide is justifiable when done while resisting any attempt to commit a felony upon one's brother. The portion of § 40–24–13, N.M.S.A.1953, dealing with justifiable homicide in coming to the defense of another provides as follows:

"Such homicide is also justifiable * * * committed in the lawful defense of * * * brother * * * when there shall be reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and there shall be imminent danger of such design being accomplished * * *."

■ It is not imperative that the charge to the jury use the precise terms of the statute. Instructions are sufficient which substantially follow the language of the statute or use equivalent language. 4 Warren on Homicide § 338. In this case

it is clear that any design by the deceased to commit a felony arose out of the struggle between deceased and Felipe Maestas. So, the jury was plainly instructed that if the appellant, acting reasonably on appearances, believed that his brother was in imminent danger of suffering death or great bodily injury at the hands of the deceased, appellant had the right to use such force as would reasonably appear necessary to repel the assault upon his brother—even to the extent of taking the deceased's life.

Appellant maintains further that the trial court erred in refusing to give requested instruction number 2, the pertinent provision of which reads:

"You are instructed that the culpability of one who acts in defense of a brother is measured by the intent with which the defendant acted, and not by the intent of the defended brother, or the party for whom he was acting, unless the defendant knew or might reasonably have known the intent of the defended brother, Felipe Maestas. * * *"

■ It has been held in a few jurisdictions, notably Texas, that the culpability of one who slays in defense of another is measured by the intent with which he acted, and not by the intent with which such other was actuated, unless he knew or might reasonably have known such intent. Monson v. State, Tex.Cr.App., 63 S.W. 647. On the other hand, there is strong authority

holding that the right of one to defend another is coextensive with the right of one to defend oneself, and the one who defends is on no higher plane than the one defended. 1 Warren on Homicide § 161; Clark and Marshall, "Crimes", § 287; 40 C.J.S. Homicide § 108. See also Hare v. State, 58 Okl. Cr. 420, 54 P.2d 670. But, whatever may be the better rule, we need not determine. The court, by instruction number 16, instructed the jury that culpability for the act done must be measured by the intent with which appellant acted. The requested instruction is merely cumulative and was properly refused. State v. Carabajal, 26 N.M. 384, 193 P. 406, 17 A.L.R. 1098.

Appellant next contends that the jury went uninstructed as to the fact that the defended party need not be in actual danger of death or great bodily harm so long as there is a reasonably apparent danger. Appellant also argues that the jury was not instructed to view the circumstances as they appeared to the defendant as a reasonable man situated as he was at the time of the shooting. We believe that the jury was adequately instructed on each of these points by the instructions given. The jury was charged that if it reasonably appeared to the appellant that his brother was in imminent danger of death or great bodily injury, then the appellant had a right to use such force as would appear reasonably necessary to repel the attack. The jury was further instructed to view the matter from appellant's viewpoint, even though it afterward appeared that no injury was intended and no danger existed.

When viewed as a whole, we think the court fairly and correctly instructed the jury as to the issues before it and this is all that was required. Snodgrass v. Turner Tourist Hotels, 45 N.M. 50, 109 P.2d 775.

Appellant contends that there was error inherent in the sentence. He was sentenced to serve a term in the State penitentiary "for a period of not less than three years and not more than life." Appellant takes the position that this sentence should have been "for a period of not less than three years", only. In other words, it was error to fix a maximum sentence. The answer to this question depends upon a proper interpretation of §§ 40–24–10 and 41–17–1, N.M.S.A.1953. Section 40–24–10 in part, provides:

"* * * Every person convicted of murder in the second degree shall be punished by imprisonment in the state penitentiary for any period of time not less than three (3) years; * * *."

The pertinent portion of section 41–17–1, N.M.S.A.1953, provides:

"* * * The court in imposing such sentence shall fix the maximum and minimum duration of the same. The term of imprisonment of any person so convicted shall not exceed the maximum nor be less than the minimum term fixed by court. * * *"

The latter section has been construed by this court to invest the District Courts with the discretion to impose sentences with minimums and maximums different than those prescribed in the penalty sections of the statutes defining particular crimes. But in no instance could the trial court impose a sentence which was less than the minimum or greater than the maximum set by the legislature. State v. Davisson, 28 N.M. 653, 217 P. 240.

The difficulty in the case of second degree murder convictions arises from the fact that no maximum limit is explicitly set out in § 40–24–10, N.M.S.A.1953. This section provides that imprisonment shall be "for any period of time not less than three (3) years." Section 41–17–1, N.M.S.A. 1953, provides that the sentence shall be "for the term as prescribed by law." The term prescribed by law must be found in the statute because at common law there were no degrees of murder. All homicide with malice aforethought was simply murder. And all murder was punishable by death. Clark and Marshall, Crimes, § 249. After careful consideration we are of the opinion that in the absence of a maximum set by the legislature, the maximum limit for second degree murder "as prescribed by law", is life imprisonment. Obviously, this is so. Life imprisonment is a "period of time not less than three (3) years", hence, it follows "life imprisonment" is the maximum penalty imposed for the crime of second degree murder. Clearly, the trial judge imposed both the minimum and the maximum penalty as prescribed by law.

It might be argued that the phrase "any period of time" could not embrace life imprisonment; that length of life is too uncertain and indefinite, and that "any period of time" implies a definite number of years. But we believe the better reasoning is expressed in Bates v. Johnston, 9 Cir., 111 F.2d 966. In that case the defendant was sentenced to life imprisonment for violation of the so-called Lindbergh Law. 18 U.S.C.A. § 1201. The defendant there, as here, urged that the statute did not fix a maximum penalty for the offense. The Act provided that upon conviction the defendant should be "punished by imprisonment in the penitentiary for such term of years as the court, in its discretion, should determine." The court held that the maximum penalty fixed by this statute was life imprisonment. Bailey v. United States, 10 Cir., 74 F.2d 451; Waley v. Johnston, 9 Cir., 112 F.2d 749. See Note, 6 Baylor Law Rev. 120.

It may not be out of place to say that the offense for which the appellant was sentenced occurred prior to the effective date of the so-called "Indeterminate Sentence Law", L.1955, ch. 150.

In view of what has been said, the judgment should be affirmed. It is so ordered.

LUJAN, C. J., and SADLER, McGHEE, and KIKER, JJ., concur.