865 P.2d 1185

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Winford HENDERSON, Defendant– Appellant.**

**No. 13812.**

Court of Appeals of New Mexico.

March 1, 1993.

Certiorari Granted April 12, 1993.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BLACK, Judge.

Defendant appeals his convictions on two counts each of contributing to the delinquency of a minor (CDM) and false imprisonment. He raises the following issues on appeal: (1) the adequacy of the uniform jury instruction on CDM; (2) the sufficiency of the evidence

supporting the CDM convictions; (3) whether the trial court should have given Defendant's requested instructions on indecent exposure; and (4) whether the trial court erred in admitting Defendant's preliminary hearing testimony. We affirm.

### THE FACTS

On April 3, 1991, Z.U. and M.H., girls aged ten and nine, went to Defendant's apartment looking for work. Defendant had paid them to work around his apartment on previous occasions. On April 3, 1991, Defendant hired the victims to clean his drapes and windows. While they were vacuuming the living room drapes, Defendant came out of the bedroom with his pants unzipped and his penis out. The victims tried to leave the apartment but Defendant moved in front of the door. He told the victims to wait because he had not paid them yet. Defendant pulled five dollars and a red and white package containing a condom out of his pants pocket. He told the victims that the condom kept girls from getting pregnant. Defendant paid the victims, and moved out of the way. Defendant did not touch the victims or try to get them to touch him. Police found a box of condoms in Defendant's bathroom, and a single condom in his pants pocket.

### I. THE CDM INSTRUCTION

Defendant contends that SCRA 1986, 14–601, the uniform jury instruction for CDM, does not accurately reflect the elements of the offense. *See* NMSA 1978, § 30–6–3 (Cum.Supp.1992). Initially we recognize that this is an issue presently before the Supreme Court in *State v. Trevino*, 113 N.M. 804, 833 P.2d 1170 (Ct.App.1991), *aff'd in part*, 113 N.M. 780, 833 P.2d 1146 (1992).[1] The briefs and orders in that case indicate, however, that the decision in *Trevino* may well rest upon an alternative basis, such as whether Trevino's convictions for CDM and criminal sexual penetration violate principles of dou-

ble jeopardy. Because we think the issues asserted here are discrete from those raised in *Trevino* and can properly be resolved by this Court, we decline to certify this case.

The trial court's instruction tracked the uniform jury instruction, SCRA 14–601 (UJI 14–601), by providing that Defendant could be convicted if he encouraged the victims to conduct themselves in a manner injurious to their morals, health, or welfare. Defendant contends UJI 14–601 is inadequate because the CDM statute requires proof of conduct causing or tending to cause delinquency, while the instruction allows conviction for conduct that causes or tends to cause the minor to act in a manner injurious to his or her morals, health, or welfare. He argues forcefully that UJI 14–601 allows a jury much wider latitude to convict. The State answers that there is no significant difference between "delinquency," as used in Section 30–6–3, and actions injurious to a minor's health, morals, or welfare. *See State v. Cawley*, 110 N.M. 705, 710, 799 P.2d 574, 579 (1990) (stating UJI 14–601 tracks statutory language).

■ Of course, this Court cannot overrule an approved uniform jury instruction. *State v. Jennings*, 102 N.M. 89, 93, 691 P.2d 882, 886 (Ct.App.), *cert. quashed*, 102 N.M. 88, 691 P.2d 881 (1984). Further, we agree with the State that UJI 14–601 reflects the broad purpose for which the CDM statute was enacted. In *State v. McKinley*, 53 N.M. 106, 111, 202 P.2d 964, 967 (1949), our Supreme Court noted:

> The ways and means by which the venal mind may corrupt and debauch the youth of our land, both male and female, are so multitudinous that to compel a complete enumeration in any statute designed for protection of the young before giving it validity would be to confess the inability of modern society to cope with the problem of juvenile delinquency.

---

1. *Trevino* was certified along with *State v. Orosco*, 113 N.M. 789, 833 P.2d 1155 (Ct.App.1991); the Supreme Court subsequently decided *Orosco* and *Trevino*, but severed review of the CDM convictions in *Trevino* pending further consideration. *State v. Orosco*, 113 N.M. 780, 781–82, 833 P.2d 1146, 1147–48 (1991).

■ We believe that, rather than expanding Section 30-6-3, UJI 14-601 is merely an attempt to provide the jury general standards of conduct which may properly be considered when applying the concept of delinquency to the behavior at issue. *Cf. State v. Grove,* 82 N.M. 679, 680, 486 P.2d 615, 616 (Ct.App.1971) (discussing the delinquent act alleged as "a violation of the law of the State or conduct injurious to the juvenile's morals").

Defendant argues that the "failure of the CDM instruction is especially a problem if CDM is interpreted to require proof beyond a reasonable doubt that the child is actually delinquent as a result of defendant's conduct, or will become delinquent in the future as a result of defendant's conduct." Initially we note that the statute only requires an "act or omission [which] . . . tends to cause or encourage the delinquency of any person under the age of eighteen." Section 30-6-3. A legal standard that requires only that a defendant's action "tends to cause" imposes a lesser burden than a standard which requires that the defendant "actually cause" delinquency. *Cf. State v. James M.,* 111 N.M. 473, 476, 806 P.2d 1063, 1066 (Ct.App.1990) (State need only prove provocative conduct, not actual disturbance, under "tends to disturb the peace" standard for disorderly conduct), *cert. denied,* 111 N.M. 529, 807 P.2d 227 (1991); *State v. Day,* 90 N.M. 154, 156, 560 P.2d 945, 947 (Ct.App.) (producing evidence "tending to show" defendant insane lesser burden than establishing insanity beyond reasonable doubt), *cert. denied,* 90 N.M. 254, 561 P.2d 1347 (1977). The clear majority of jurisdictions interpreting statutes requiring only conduct which "tends" to cause delinquency have held it is not necessary to allege or prove the minor has actually become delinquent. J.A. Bock, Annotation, *Criminal Liability for Contributing to Delinquency of Minor As Affected by the Fact That Minor Has Not Become a Delinquent,* 18 A.L.R.3d 824, § 2 (1968); Derryck H. Dittman, Note, *Contributing to Delinquency Statutes—An Ounce of Prevention?,* 5 Willamette L.J. 104, 107 (1968). Moreover, our statute allows conviction for activity which only tends to "encourage" rather than cause delinquency. This is again a lesser standard than requiring proof that the defendant's actions actually caused the victim to become delinquent. *See State v. Blount,* 60 N.J. 23, 286 A.2d 36, 38 (1972); *Lovvorn v. State,* 215 Tenn. 659, 389 S.W.2d 252, 256 (1965); *Montgomery v. State,* 115 Ind.App. 189, 57 N.E.2d 943, 945 (1944) (en banc).

While we expressed some concern about the language of UJI 14-601 in the factual context of *Trevino,* 113 N.M. at 809, 833 P.2d at 1175, we do not share the same concerns under the facts of this case. Given the broad purposes of the CDM statute, we believe the instruction fairly presented the statutory crime to the jury.

## II. *SUBSTANTIAL EVIDENCE OF DELINQUENCY*

■ Defendant also argues there was not substantial evidence to prove an essential element of CDM, to-wit, that his actions tended to or actually caused the victims' delinquency. Substantial evidence is evidence acceptable to a reasonable mind as adequate support for a conclusion. *State v. Sparks,* 102 N.M. 317, 694 P.2d 1382 (Ct.App. 1985). In considering the adequacy of the evidence, we view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences in favor of the State. *State v. Sutphin,* 107 N.M. 126, 753 P.2d 1314 (1988).

The victims testified that Defendant: exposed his penis to them; pulled a condom out of his pants; and told the victims it kept girls from getting pregnant. We reject Defendant's argument that he cannot be convicted for simply displaying and explaining the use of a condom. Defendant was convicted for displaying a condom while exposing himself and blocking the victims' exit from his apartment. Like the Supreme Court in *State v. Favela,* 91 N.M. 476, 576 P.2d 282 (1978) (per curiam), *overruled on other grounds by State v. Pitts,* 103 N.M. 778, 714 P.2d 582 (1986), we cannot accept the hypothesis underlying

Defendant's argument that he was performing a legitimate "educative" function.[2] This evidence is sufficient to support Defendant's CDM convictions, without specific testimony as to the direct effect of such conduct on the victims. *See People v. Brosnan*, 361 Ill. 545, 198 N.E. 708 (1935); *Blount*, 286 A.2d at 40; *Wallin v. State*, 84 Okl.Cr. 194, 182 P.2d 788 (App.1947); *cf. State v. Corbin*, 111 N.M. 707, 809 P.2d 57 (Ct.App.) (evidence that Defendant showed minor victim *Playboy* magazine and subsequently told victim to unbutton his pants supported CDM charge), *cert. denied*, 111 N.M. 720, 809 P.2d 634 (1991).

### III. *THE INDECENT EXPOSURE INSTRUCTION*

■ Defendant requested "step down" instructions on indecent exposure. The trial court denied the request on the ground that Defendant did not expose himself to public view. *See State v. Artrip*, 112 N.M. 87, 811 P.2d 585 (Ct.App.), *cert. denied*, 112 N.M. 21, 810 P.2d 1241 (1991); *State v. Romero*, 103 N.M. 532, 710 P.2d 99 (Ct.App.), *cert. denied*, 103 N.M. 525, 710 P.2d 92 (1985).

In support of his requested instructions, Defendant argued that exposure to anyone other than himself constituted exposure to public view. Defendant later contended that exposure before more than one person always constituted public view. On appeal, Defendant asserts that any exposure was in public view because the victims were not members of his household. He also argues on appeal that *Artrip* wrongfully added the element of "public place" to the indecent exposure statute.

Indecent exposure requires a knowing and intentional exposure of the primary genital area to public view. NMSA 1978, § 30–9–14 (Repl.Pamp.1984). Public view requires that "the offense must be intentionally perpetrated in a place accessible or visible to the

general public." *Romero*, 103 N.M. at 536, 710 P.2d at 103. What constitutes public view depends on the circumstances of each case. *Id.; Artrip*, 112 N.M. at 88, 811 P.2d at 586. In *Romero*, we held that the defendant's act of exposing himself within the confines of his home did not constitute exposure to "public view." 103 N.M. at 536, 710 P.2d at 103. Similarly, the acts in this case took place inside Defendant's apartment.

In *Romero*, we also noted that the legislature had apparently narrowed the crime of indecent exposure before a child by inserting the words "public view" into the statute. *Id. Romero* contains a detailed discussion of legislative intent and the plain meaning of the statutory language. *Id.* at 535–36, 710 P.2d at 102–03. Despite the concerns we expressed in *Romero*, the legislature has not changed the statute. We believe the fact that the victims were not members of Defendant's household is irrelevant under the definition of public view in *Romero* and *Artrip*.

■ Defendant contends there was evidence he could be seen through the window by anyone outside; thus, he reasons he was entitled to the indecent exposure instruction. Specifically, there was evidence that Defendant was ten feet from a window, that the window faced a playground and some stairs, and that M.H. was looking out the window hoping to see her friend who could help. We reject Defendant's argument for two reasons. First, Defendant primarily argued to the trial court that exposure before one or more persons was always in public view. He did not argue that there was evidence that the place he exposed himself was visible or accessible to the general public. *See Romero*, 103 N.M. at 536, 710 P.2d at 103. Defendant may not change his argument on appeal. *See State v. Baca*, 111 N.M. 270, 278, 804 P.2d 1089, 1097 (Ct.App.1990), *cert. denied*, 111 N.M. 164, 803 P.2d 253 (1991).

■ Second, we conclude there was no evidence from which the jury could reason-

---

**2.** In his special concurrence with this Court's opinion in *Favela*, No. 3195, slip op. at 1–2 (N.M.Ct.App. Feb. 7, 1978), Judge Sutin wrote: "A consensual act of sexual intercourse engaged in by a young man is nothing more than sex education essential and necessary in his growth toward maturity and subsequent domestic family life." The Supreme Court granted certiorari, on its own motion, and filed a per curiam opinion reversing this Court's opinion and reinstating the conviction for contributing to the delinquency of a minor.

ably have inferred that Defendant's exposure was visible to public view. The trial court asked counsel whether Defendant was standing by the window and which direction he was facing. Defense counsel conceded there was no evidence that anyone outside saw Defendant. Further, we find nothing in the record indicating that Defendant *intentionally* positioned himself in such a way as to be visible or accessible to the general public. *See Romero,* 103 N.M. at 536, 710 P.2d at 103 (rejecting unintentional exposure as basis for indecent exposure, particularly when events occur in one's home); *cf. State v. Vega,* 38 Conn.Supp. 313, 444 A.2d 927 (1982) (defendant could reasonably expect to be viewed by others when he stood in window, and knocked to gain victim's attention).

A defendant is entitled to an instruction on his theory of the case only if there is evidence to support it. *State v. Ho'o,* 99 N.M. 140, 654 P.2d 1040 (Ct.App.), *cert. denied,* 99 N.M. 148, 655 P.2d 160 (1982). We find no error in the trial court's refusal of Defendant's indecent exposure instructions.

### IV. *THE PRELIMINARY HEARING TESTIMONY*

Defendant contends the trial court erred in admitting his preliminary hearing testimony regarding a prior incident with the victims. The transcript of the testimony was admitted as a State's exhibit. However, the exhibit was not made part of the record on appeal. Thus, we will not consider Defendant's contention. *See State v. Sacoman,* 107 N.M. 588, 762 P.2d 250 (1988); *State v. Duncan,* 95 N.M. 215, 619 P.2d 1259 (Ct.App.1980); *see also State v. Ford,* 81 N.M. 556, 559, 469 P.2d 535, 538 (Ct.App.1970) (where preliminary hearing testimony not in record before reviewing Court, claim based upon testimony was outside record and presented no issue for review).

### *CONCLUSION*

Defendant's convictions are affirmed.

IT IS SO ORDERED.

DONNELLY and BIVINS, JJ., concur.