865 P.2d 1181

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Winford HENDERSON, Defendant–Petitioner.**

**No. 21127.**

Supreme Court of New Mexico.

Nov. 10, 1993.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for petitioner.

Tom Udall, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for respondent.

## OPINION

RANSOM, Chief Justice.

Winford Henderson was convicted on two counts each of contributing to the delinquency of a minor (CDM) under NMSA 1978, Section 30–6–3 (Cum.Supp.1992), and of false imprisonment under NMSA 1978, Section 30–4–3 (Repl.Pamp.1984). He appealed to the Court of Appeals, which affirmed. *See State v. Henderson,* 116 N.M. 541, 865 P.2d 1185 (Ct.App.1993). We granted his petition for a writ of certiorari and now review two issues: whether the uniform jury instruction on CDM (SCRA 1986, 14–601) is deficient, and whether it was error for the trial court to refuse to instruct the jury on the offense of indecent exposure before a minor as a lesser included offense of CDM. We affirm on those issues and affirm without discussion the other issues addressed in the opinion of the Court of Appeals.[1]

*The CDM jury instruction adequately reflects the statute.* Section 30–6–3 makes it a criminal offense for any person to commit an act or omission that "causes or tends to cause or encourage the delinquency of any person under the age of eighteen years." As Henderson points out, the jury instructions must accurately reflect the elements of the crime. *See Jackson v. State,* 100 N.M. 487, 489, 672 P.2d 660, 662 (1983) (absence in jury instruction of an essential element of the crime is reversible error). Henderson argues that the court's jury instruction does not accurately reflect the elements of CDM. We review those arguments today to determine if the language of the instruction, as given in this case, "substantially follow[s] the language of the statute or use[s] equivalent language." *State v. Maestas,* 63 N.M. 67, 71, 313 P.2d 337, 340 (1957).

The uniform jury instruction does not tell the jury, in the words of Section 30–6–3, that it must find the defendant "contributed to delinquency." Instead, three alternative types of delinquent behavior are described, and the exact wording of the instruction given depends on the circumstances of the particular case. *See* SCRA 14–601. Under Uniform Jury Instruction 14–601, the jury is instructed to find the defendant guilty of CDM if the defendant's conduct causes or encourages the minor to: (1) commit a crime; (2) refuse to obey the lawful command or directions of a person with lawful authority over the minor (such as a parent or teacher); or (3) conduct herself in a manner injurious to the morals, health, or welfare of herself or another person. *See id.* The terms "morals," "health," and "welfare" may be given individually or in combination. *Id.* In this case the jury was instructed to find Henderson guilty of CDM if his acts encouraged each of the girls in question to conduct herself in a manner injurious to her morals, health, or welfare.

Our inquiry is whether the language of the instruction substantially follows the statute or uses language equivalent to the meaning

---

1. The facts of this case are set out in the Court of Appeals opinion and are not repeated here.

of "delinquent" as that term is used in the CDM statute. *Cf. State v. Cawley,* 110 N.M. 705, 710, 799 P.2d 574, 579 (1990) (holding instruction on CDM given in that case tracked the language of the statute). To make that determination, we must examine the meaning of the term "delinquency" in our CDM statute. We explained in *State v. Trevino,* 116 N.M. 528, 532, 865 P.2d 1172, 1176 (1993), that whether the defendant's acts contributed to delinquency is a question for the jury. "The common sense of the community, as well as the sense of decency, the propriety, and the morality which most people entertain, is sufficient to apply the statute to each particular case, and point out what particular conduct is rendered criminal by it." *State v. McKinley,* 53 N.M. 106, 111, 202 P.2d 964, 967 (1949) (quoting *State v. Millard,* 18 Vt. 574, 577 (1846)).

Neither the legislature nor our courts have precisely defined "delinquency" as used in the CDM statute because it is not susceptible to precise definition. *See McKinley,* 53 N.M. at 110, 202 P.2d at 966 (upholding CDM statute as not being unconstitutionally vague, and noting that the legislature may create offense by defining it as an act which produces a certain result) (quoting *State v. Friedlander,* 141 Wash. 1, 250 P. 453, 455 (1926), *appeal dismissed,* 275 U.S. 573, 48 S.Ct. 17, 72 L.Ed. 433 (1927)). This Court reaffirmed that the definition of CDM was not unconstitutionally vague for failing to enumerate each and every act that would constitute contributing to delinquency in *State v. Favela,* 91 N.M. 476, 478, 576 P.2d 282, 284 (1978) (per curiam), *overruled in part on other grounds by State v. Pitts,* 103 N.M. 778, 780, 714 P.2d 582, 584 (1986).

In many states the definition of delinquency for purposes of CDM is connected to the state's juvenile code. *See, e.g.,* Cal.Penal Code § 272 (West 1988) (contributing statute defines delinquent child by reference to juvenile code); Ohio Rev.Code Ann. § 2919.24 (Anderson 1987) (same). Other states have established a similar nexus by judicial decision. *See, e.g., State v. Austin,* 160 W.Va. 337, 234 S.E.2d 657, 659 (1977) ("In this State, as in most, the [CDM] statute is broadly phrased and must be read *in pari materia* with the statute defining a delinquent child to ascertain the elements of the crime.").

In *McKinley,* this Court noted that a previous version of New Mexico's CDM statute had tied the definition of delinquency in CDM to the definition of juvenile delinquency in the Children's Code. 53 N.M. at 108–09, 202 P.2d at 965–66 (noting that CDM statute had been amended by 1943 N.M. Laws, ch. 36, § 1, deleting language that tied CDM to definition of juvenile delinquency). The definition of a juvenile delinquent included a minor who "habitually deports himself as to injure or endanger the morals, health or welfare of himself or others." *Id.* at 109, 202 P.2d at 965 (quoting NMSA 1941, § 44–101 as amended by 1943 N.M. Laws, ch. 40, § 1). The effect of severing the definition of delinquency in CDM from other statutory definitions of the term was that the meaning was no longer limited to those other definitions. *Id.* at 109, 202 P.2d at 966 (holding encouragement of acts within the definition of juvenile delinquency "at the least" constitutes CDM); *see also State v. Leyba,* 80 N.M. 190, 192, 453 P.2d 211, 213 (Ct.App.) (holding charge of CDM is supported if defendant's acts encourage conduct injurious to the minor's morals), *cert. denied,* 80 N.M. 198, 453 P.2d 219 (1969). This Court later disavowed any nexus between "delinquency" as the term is used for CDM and as defined in the Children's Code. *Favela,* 91 N.M. at 477–78, 576 P.2d at 283–84 (1978) (holding CDM statute and Children's Code are separate in purpose and application). While the Children's Code had been amended to narrow the definition of "delinquent act," that amendment did not "extend, amend, change or become incorporated into" the CDM statute. *Id.* at 478, 576 P.2d at 284.

Looking at the history of our CDM statute, we find that encouraging conduct by a minor that is injurious to the health, morals, or welfare of minors has long constituted the offense of CDM in New Mexico. The

legislature's earlier and subsequent use of injurious conduct to define juvenile delinquency or establish juvenile court jurisdiction does not limit the use of injurious conduct for purposes of CDM.[2] Therefore, the language of the jury instruction given in this case is equivalent to the language of the statute.

*Henderson was not entitled to an instruction on indecent exposure as a lesser included offense of CDM.* At trial, Henderson requested "step down" instructions on the crime of indecent exposure, *see* NMSA 1978, § 30-9-14 (Repl.Pamp.1984), as a lesser included offense of CDM. Henderson claims that the failure to instruct on indecent exposure denied him due process and a fair trial. *See Beck v. Alabama,* 447 U.S. 625, 638, 100 S.Ct. 2382, 2390, 65 L.Ed.2d 392 (1980) (holding failure to instruct on a lesser included offense violates due process where a capital crime is charged and the failure enhances risk of unwarranted conviction); *State v. Riggsbee,* 85 N.M. 668, 671, 515 P.2d 964, 967 (1973) (noting that New Mexico consistently has recognized right of defendant to lesser included offense instruction when warranted by the evidence in murder case). We affirm the ruling of the trial court on grounds different from those relied upon by the Court of Appeals.

*We do not address the grounds relied upon by the Court of Appeals.* The trial court refused the instruction on the ground that

Henderson did not expose himself to "public view," as that term has been interpreted by the Court of Appeals. *See, e.g., State v. Artrip,* 112 N.M. 87, 88, 811 P.2d 585, 586 (Ct.App.), *cert. denied,* 112 N.M. 21, 810 P.2d 1241 (1991) (holding that "public view" means a place accessible or visible to the general public, i.e., the act is likely to be seen by a number of casual observers). The Court of Appeals affirmed the refusal on two grounds. First, because Henderson did not argue to the trial court that the incident was visible or accessible to the general public, the Court would not allow him to raise that argument on appeal. Second, the Court of Appeals concluded that there was no evidence to support a finding that Henderson *"intentionally* positioned himself in such a way as to be visible or accessible to the general public." *Henderson,* 116 N.M. at 545, 865 P.2d at 1189.[3]

■ Henderson argues that the Court of Appeals has wrongly narrowed the statute with its interpretation of "public view." The Court of Appeals first interpreted the meaning of "public view" in *State v. Romero,* 103 N.M. 532, 536, 710 P.2d 99, 103 (Ct.App.), *cert. denied,* 103 N.M. 525, 710 P.2d 92 (1985). After an extensive inquiry into the history of the offense, the Court determined that the legislature intended the offense to be committed only if it is "intentionally perpetrated in a place accessible or visible to

---

**2.** The committee commentary to SCRA 14-601 questionably assumes that "the legislature in enacting the Criminal Code in 1963 intended that the definition of juvenile delinquent for purposes of juvenile court jurisdiction be used in interpreting [the CDM statute]." As explained above, the definition of delinquency in the CDM statute was once tied to the Children's Code, but is no longer. The fact that injurious conduct may subject a child to the jurisdiction of the juvenile court does, however, support our holding today. Conduct that places the child under the protection of the juvenile court is, "to say the least," the type of conduct that the CDM statute is intended to prevent. *McKinley,* 53 N.M. at 109, 202 P.2d at 966.

**3.** We do not wish to investigate the facts of this case or the type of intent that is required for indecent exposure, but we note that there was evidence that Henderson intentionally exposed

himself to the two girls, that he walked into the living room and over to block the outside door, that the room had a window with the curtains drawn far enough that one of the girls was able to look out to see if a friend was outside, that there were stairs outside the window, and that there was a playground outside the window not too far away. Further, there may be a conflict between the holding by the Court of Appeals in this case and *Artrip,* where the Court of Appeals held that exposure was in a public place even though only viewed by one person, whose attention he attracted, because it was a place "that was accessible or visible to the general public." *Artrip,* 112 N.M. at 88, 811 P.2d at 586. In contrast, in this case the Court of Appeals finds it noteworthy that there was no evidence that anyone other than the two girls in the apartment actually saw Henderson's indecent act. *Henderson,* 116 N.M. at 545, 865 P.2d at 1189.

the general public." *Id.* In spite of the numerous other jurisdictions cited to us by Henderson where a different result has been reached under various indecent exposure statutes, *see, e.g., McGee v. State,* 165 Ga. App. 423, 299 S.E.2d 573, 575 (1983), we are not inclined today to take issue with the interpretation in *Romero.* Where there is a judicial interpretation of words in a statute that the legislature has not taken steps to change, we are reluctant to assume that the legislature disagrees with that interpretation. *Cf. Buzbee v. Donnelly,* 96 N.M. 692, 700, 634 P.2d 1244, 1252 (1981) (terms of art in statute interpreted in accordance with case law interpretation or statutory definition, if any, of those words); *Bettini v. City of Las Cruces,* 82 N.M. 633, 635, 485 P.2d 967, 969 (1971) (legislature is presumed to know statutory and common law when it enacts a statute); *Chase v. Lujan,* 48 N.M. 261, 274, 149 P.2d 1003, 1011 (1944) (this Court should not depart from former decisions without conviction that the law has been settled wrongly). In any event, recognizing that "[l]egislative silence is at best a tenuous guide to determining legislative intent," *Swink v. Fingado,* 115 N.M. 275, 283, 850 P.2d 978, 986 (1993), we need not address this contention because of our holding below.

 *Indecent exposure is not a lesser included offense of CDM.* Henderson correctly points out that New Mexico cases generally permit an instruction to be given on a lesser included offense when there is evidence tending to establish the lesser offense and some view of the evidence would sustain a finding that the lesser offense was the highest degree of the crime committed. *See State v. Escamilla,* 107 N.M. 510, 512, 760 P.2d 1276, 1278 (1988). He neglects to mention, however, that before such instruction can be given, the lesser offense must be included in the greater offense. *See State v. Garcia,* 114 N.M. 269, 273, 837 P.2d 862, 866 (1992) (to qualify as a lesser included offense, lesser offense cannot have any element not included in the greater). As discussed above, an element of indecent exposure is that the defendant's acts take place in "public

view;" there is no such element in CDM, which may be committed in a private place. *Compare* § 30–6–3 (defining CDM) *with* § 30–9–14 (defining indecent exposure). Therefore, indecent exposure is not an included offense within CDM, and the trial court's refusal to give the instruction as a lesser included offense was proper. The judgment of the trial court is affirmed.

*Conclusion.* The jury instruction for CDM accurately reflects the elements of the crime as set out by statute. Further, indecent exposure is not a lesser included offense to CDM. Therefore, the judgment of the Court of Appeals is affirmed.

**IT IS SO ORDERED.**

BACA and FROST, JJ., concur.