2006-NMCA-066

136 P.3d 1013

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Bailon Melvin SALAZAR,
Defendant–Appellant.**

No. 24,468.

Court of Appeals of New Mexico.

Feb. 15, 2006.

Certiorari Granted, No. 29,745,
June 2, 2006.

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

ALARID, Judge.

{1} Defendant appeals his convictions and sentence on two counts of criminal sexual penetration of a minor (CSPM). Defendant makes six allegations of error: (1) improper expert testimony regarding the allegations of molestation; (2) improper denial of access to an expert for Defendant; (3) improper vouching by the prosecutor; (4) improper denial of a continuance; (5) improper instruction of the jury; and (6) improper refusal by the trial court to determine that the Earned Meritorious Deduction Act, NMSA 1978, § 33-2-34 (1999), does not apply to Defendant's convictions. We conclude that no error occurred here and affirm the judgment and sentence, concluding that the earlier version of Section 33-2-34 applies to Defendant. We remand for entry of an amended judgment and sentence, clarifying that neither of Defendant's offenses may be used to deny him the opportunity to earn thirty days per month of good time credit.

## BACKGROUND

{2} In 2002, Defendant was charged with ten counts of CSPM of his step-son (the victim). The original information charged the crimes over a period of time from September 11, 1996, to March 11, 2001. The charges were later amended to limit the time period from July 1996 through December 1999. Trial dates were continued several times at the request of both Defendant and the State. After about a year and shortly before trial was scheduled to begin, Defendant retained different counsel. New counsel requested and obtained a continuance of the trial setting. Thereafter, counsel filed a flurry of motions, including one to have Defendant transported to Albuquerque to meet with a psychologist for the purpose of conducting an assessment of Defendant. The trial court denied the motion to transport. Defense counsel renewed the motion in open court. The trial court again denied the motion stating that Defendant would not be transported to Albuquerque at State expense in order to prepare his defense.

{3} A week later, defense counsel again raised the issue in his motion to dismiss or,

in the alternative, for continuance of the trial setting. This motion was addressed prior to the start of the trial. Further continuance of the trial was denied.

{4} At the trial, the victim testified about the molestation. He stated that it happened nine times, eight times in a truck and one time at home. The victim was able to identify the time of only two of the penetrations, the first time, which was shortly after his seventh birthday, and the last time, which occurred at home when he was eleven. The victim identified the locations of other penetrations, but could not state exactly when they occurred. A pediatrician testified to her physical examination of the victim several years after the last penetration occurred. She testified that the exam was normal, but explained that a normal exam was usual in such cases. The victim's grandmother testified about how he had told her of the molestation, and how she had then called the counselor at the boy's school. The counselor testified about how he was made aware of the allegations and how he then reported them to Child Protective Services.

{5} The defense presented evidence trying to establish that the victim was untruthful and that his grandmother had made him make the allegations. Defendant testified on his own behalf. He testified that he did take the victim in his truck, but not to the areas where the boy stated the penetration occurred. Defendant categorically denied ever sexually molesting the victim or any other child.

{6} At the conclusion of the State's case, the trial court directed a verdict of acquittal as to one count of sexual penetration as the victim clearly testified that the molestation occurred nine times. The jury was instructed on nine counts of CSPM. Each of the instructions was identical. There was no distinguishing of the counts by time or place. The jury found Defendant guilty of Counts 1 and 9 and not guilty of the other counts. Defendant moved for a new trial, arguing that a number of errors occurred during the trial and that the jury was improperly instructed. The motion for a new trial was denied.

{7} At the sentencing hearing, the State read a letter from the victim asking for the full sentence to be imposed. Defendant requested mitigation of the sentence. The trial court refused to mitigate, sentencing Defendant to two consecutive eighteen-year terms. Sua sponte, the trial court conducted a second sentencing hearing at which it decided that the two sentences would run concurrently. At that hearing, Defendant raised the issue of which version of the Earned Meritorious Deduction Act would apply to him. The trial court requested briefing on the issue, which Defendant provided. However, the trial court never ruled on the matter.

## DISCUSSION

### STATE'S EXPERT WITNESS

{8} Defendant contends that the trial court erred in allowing the State's expert, the pediatrician who had physically examined the victim, to present conclusory evidence that the victim was sexually molested. Defendant contends that the expert's testimony was in violation of *State v. Alberico*, 116 N.M. 156, 861 P.2d 192 (1993). In *Alberico*, the Supreme Court ruled that an expert may give testimony regarding symptoms that the victim suffers that are consistent with sexual abuse. Such testimony may not be offered to establish that the victim is telling the truth. *Id.* at 175, 861 P.2d at 211. Nor can the expert testify that the symptoms were in fact caused by sexual abuse. *Id.* at 176, 861 P.2d at 212. Such testimony vouches too much for the credibility of the victim and encroaches on the province of the jury to determine credibility. *Id.*

{9} Initially, we note that the objections raised during the expert's testimony do not relate to the issues briefed by Defendant. We do not address issues that were not raised below. The trial court must be alerted to the problem and given an opportunity to resolve it. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. Additionally, parties cannot change their arguments on appeal. *State v. Henderson*, 116 N.M. 541, 545, 865 P.2d 1185, 1189 (Ct.App.1993), *aff'd*, 116 N.M. 537, 865 P.2d 1181 (1993), *overruled on other grounds*, *State v. Meadors*, 121 N.M. 38, 908 P.2d 731

(1995). We note that many of the issues argued on appeal are not the issues that were presented to the trial court.

{10} Defendant states that he made timely and repeated objections to the expert testifying to anything but the fact that the physical exam showed nothing. His citation to the record points to pretrial arguments regarding what the expert might testify to. Before trial commenced, the trial court stated that the expert would be allowed to testify to her physical examination of the victim. Later in the hearing, there was discussion regarding the psychology of the delay in reporting abuse. Finally, the trial court reiterated that the expert could testify about her physical exam, but could not state that the victim exhibited traits of someone who had been sexually abused.

{11} During the expert's testimony, Defendant made three objections and was involved in one bench conference. The first objection was during the expert's testimony relaying what the victim had told her about what Defendant did to him. At that time, counsel moved for a mistrial, arguing that under *State v. Fairweather,* 116 N.M. 456, 863 P.2d 1077 (1993), and *Alberico,* 116 N.M. at 175, 861 P.2d at 211, the expert was not allowed to testify and identify who the perpetrator was. The trial court denied the motion for mistrial. A bench conference was held after the expert explained why she needed information about the particulars of the allegations. There was no audible ruling limiting the testimony of the expert. The second objection was made when the expert was asked to explain the reason why nearly 95% of the exams that she does for sexual abuse show normal. Defendant's objection was for relevance and the trial court overruled the objection. The third objection was made when the expert testified about other people's knowledge regarding the healing of rectal tissue. The expert was asked to testify about her own knowledge.

{12} The record does not support Defendant's claim that he made timely and repeated objections to the expert's testimony pursuant to *Alberico.* Only one objection was made that relates to the issues raised in the brief. That was an objection to the expert's identification of Defendant as the perpetrator. However, as is clear from the record, the expert was not identifying Defendant as the perpetrator. Rather, she was relaying how the victim came to her for examination and the information that he relayed to her before the examination. Such information is not the identification of the perpetrator that is prohibited by *Alberico.* What *Alberico* prohibits is the expert testifying to the identity of the alleged perpetrator of the crime as a result of an examination of the victim. 116 N.M. at 175, 861 P.2d at 211. *Alberico* does not prohibit an expert from testifying as to what she was told at the time of her physical examination, so long as she does not improperly comment on the victim's credibility or testify as to her belief that the defendant was the perpetrator. *See id.* at 175–76, 861 P.2d at 211–12; *see also State v. Lucero,* 116 N.M. 450, 455, 863 P.2d 1071, 1076 (1993) (reversing where "[i]n so many words, [the expert] testified that the complainant had in fact been molested. She went a step further and stated that it was the defendant who abused the complainant. She also commented that the complainant's statements were truthful"). Where the expert does not use his or her expertise in testifying about the identity of the perpetrator, and instead is just repeating what the alleged victim related, we analyze the issue under hearsay rules, and not the rules governing the admission of expert testimony. *See In re Esperanza M.,* 1998–NMCA–039, ¶¶ 11–12, 124 N.M. 735, 955 P.2d 204. Defendant does not claim improper admission of hearsay in this case.

{13} Defendant contends that the expert was improperly vouching for the victim by relying on the victim's statement in making her examination. Defendant did not object to the expert's testimony on the basis of vouching. However, even if we were to find that Defendant's general objection citing *Alberico* was sufficient to preserve a claim of vouching, we conclude that the expert's testimony did not comment on the victim's credibility or truthfulness.

{14} Defendant refers to that portion of the expert's testimony where she stated

that the victim was "rare" in the level of his "forthrightness" and "seriousness" when he told her about the abuse. The expert was not vouching for the truthfulness of the victim's report. Rather, reading her words in context, it was clear that she was explaining that it was rare for her to be able to speak intelligently in an adult-like fashion with a patient. Her comments related to the victim's manner in reporting to her, not his honesty or truthfulness.

{15} Finally, Defendant argues that the trial court erred in allowing the expert to testify to rape trauma syndrome. Defendant did not object to the expert's single reference to rape trauma syndrome. Thus, any alleged error in allowing such testimony was not preserved. Moreover, the reference to rape trauma syndrome concerned only the kinds of things the expert generally needs to know in order to conduct a sexual abuse exam. She made no reference to the victim having any symptoms of rape trauma syndrome. Therefore, Defendant's claim is unsupported by the facts in the record.

## THE TRIAL COURT'S REFUSAL TO ORDER TRANSPORT AT THE STATE'S EXPENSE

{16} Defendant contends that the trial court erred in refusing to allow him to be transported, at State's expense, to Albuquerque for examination by a psychologist there. Defendant argues in his brief that the trial court erred in ruling that the psychologist's testimony was inadmissible and in excluding the testimony. In fact, Defendant never tendered any expert testimony and the trial court did not ultimately rule that Defendant's psychologist's testimony would be inadmissible. Thus, Defendant's argument as it relates to exclusion of expert testimony is not relevant to this case. We are concerned only with whether the trial court abused its discretion in refusing to order Defendant's transportation at State's expense for evaluations in preparation of his defense.

{17} Defendant argues that it was a per se abuse of discretion for the trial court to infringe on his ability to present a defense. See State v. Stanley, 2001–NMSC–037, ¶ 24,

131 N.M. 368, 37 P.3d 85. As we noted earlier, this issue was raised after Defendant obtained the services of new counsel. At that time, counsel presented an ex parte motion to the trial court to transport Defendant to Albuquerque to visit with Dr. Roll. The motion was denied without a hearing as the trial court ruled that it did not consider ex parte motions. Thereafter, a hearing was held on the request to transport. The trial court was concerned about the cost of transporting Defendant to Albuquerque. The State expressed concern about using two deputies for transport and the consequent impairment of the ability to adequately patrol the county. The court asked why Dr. Roll could not come to Farmington and was told that he charged too much and Defendant could not afford it. The trial court suggested using the telephone and Defendant said that could not be done. The trial court then suggested getting an evaluation by someone else in San Juan County. Again, Defendant declined, saying that Dr. Roll had already been retained. Defendant's counsel then suggested that his private investigator, who was a former sheriff, could transport Defendant. The court decided that Defendant needed to bring Dr. Roll to San Juan County. The court determined that Defendant did not have the right to have the State pay for defense costs.

{18} We conclude that the trial court did not abuse its discretion in denying Defendant's request to have Defendant transferred at the State's expense to Albuquerque for examination by his expert.

{19} None of the cases relied on by Defendant support his contention. In those cases, an abuse of discretion was found in the exclusion of expert testimony that purported to be a major part of the defense. See Stanley, 2001–NMSC–037, ¶ 24, 131 N.M. 368, 37 P.3d 85. Here, there was no exclusion of Dr. Roll's testimony. In fact, the trial court ruled that if Dr. Roll were to come to Farmington to examine and evaluate Defendant, the court would facilitate such an examination. The trial court did not exclude Dr. Roll as an expert. In fact, Dr. Roll was never presented as an expert because Defen-

dant apparently could not afford to have him come to Farmington for the evaluation. Importantly, Defendant never made a factual showing that he was indigent or otherwise was unable to pay Dr. Roll to come to San Juan County. Defendant appears to have only stated that it would be cost prohibitive because "he probably charges upwards of two hundred and fifty bucks an hour to travel." In addition, Defendant did not make a showing of why Dr. Roll was necessary. When the court asked why Defendant could not get another expert, Defendant's only response was that "the family has already retained Doctor Roll to do this." Finally, because Dr. Roll never examined Defendant, Defendant's assertions of his likely testimony was entirely speculative. A trial court is not required to expend public funds on behalf of defendants who do not make the required showing of necessity for the defense services or inability to pay for them. *See State v. Carrillo,* 88 N.M. 236, 237–38, 539 P.2d 626, 627–28 (Ct.App.1975). Thus, Defendant's argument in his brief that the trial court erred in excluding the testimony of Dr. Roll is not supported by the record in this case.

## PROSECUTORIAL MISCONDUCT

{20} Defendant contends that the prosecutor engaged in misconduct by directly vouching for the victim's testimony. We note that there was no objection made by Defendant during either the prosecution's opening or closing argument. We have often stated that a prompt objection and ruling by the trial court goes a long way to curing prosecutorial vouching. *State v. Pennington,* 115 N.M. 372, 382, 851 P.2d 494, 504 (Ct.App. 1993). Defendant's claim of improper vouching by the prosecutor was not preserved. Nor does Defendant argue that it was fundamental error. Therefore, we will not address the merits of the claim.

## DENIAL OF CONTINUANCE

{21} "The trial court has broad discretion in granting or denying a motion for a continuance, and absent a demonstrated abuse resulting in prejudice to the defendant, there is no basis for reversal." *State v. Aragon,* 1997–NMCA–087, ¶ 22, 123 N.M.

803, 945 P.2d 1021. Furthermore, a motion for continuance filed at the last minute is not favored. *Id.*

{22} Defendant argues that the trial court erred by ordering that the trial proceed only twenty-one days after new defense counsel had been retained. Defendant appears to be arguing that the trial court would not grant him even one continuance. In fact, the record shows that Defendant had been granted four continuances since he was arrested. The fourth continuance was granted after new counsel was retained and extended the trial date for two and one-half months. Thus, contrary to Defendant's assertion in his brief, his newly retained counsel had about three months to prepare, not three weeks. Trial counsel, in fact, recognized that he had three months to prepare. Defendant's request for a fifth continuance was made eight days before trial was scheduled. In that request, Defendant argued that he needed more time in order to schedule his evaluation by Dr. Roll.

{23} The court is to consider several factors in deciding whether or not to grant a continuance: (1) the length of the requested delay, (2) the likelihood that a delay would accomplish the movant's objectives, (3) the existence of previous continuances in the same matter, (4) the degree of inconvenience to the parties and the court, (5) the legitimacy of the motives in requesting the delay, (6) the fault of the movant in causing a need for the delay, and (7) the prejudice to the movant in denying the motion. *State v. Torres,* 1999–NMSC–010, ¶ 10, 127 N.M. 20, 976 P.2d 20.

{24} Here, the trial had already been delayed more than eight months. Although Defendant contends in his brief that he was asking for only a couple of weeks, his motion requested two months. Moreover, the trial court could reasonably have concluded that additional time beyond the two months would be needed if indeed Defendant did obtain an evaluation by Dr. Roll, as the State would have to be permitted to interview Dr. Roll and perhaps obtain a rebuttal expert.

{25} Defendant stated as the reason for his request for a continuance a need for

additional time in order to have Dr. Roll perform an evaluation. As we have already discussed above, the trial court refused to allow Defendant to be transported to Albuquerque at the State's expense for the evaluations. Defendant, at that time, stated that he could not afford to get Dr. Roll to come to Defendant for the evaluation. In his motion, Defendant did not demonstrate how he was going to get the evaluation done. Defendant failed to show that additional time would accomplish anything.

{26} As we pointed out above, Defendant had already been granted four continuances and the trial had been delayed more than eight months. In considering the degree of inconvenience to the parties and the court, we note that the motion was filed only a week before trial. The State's witnesses had already been subpoenaed for trial and a continuance would have made that a wasted effort. Further, the court recognized that the victim and the State had a right to have the matter tried expeditiously. In addition, the record shows that defense counsel had filed four last-minute motions about a week before trial. Counsel had had a number of weeks prior to trial in which to file these motions. Thus, the trial court could have found a lack of diligence on the part of defense counsel in preparing for trial. Defense counsel filed the motion to transport three days before the appointment with Dr. Roll in Albuquerque. Further, defense counsel insisted on Dr. Roll being the only expert he wanted. Thus, the trial court could have determined that it was defense counsel's fault in causing the claimed need for the delay.

{27} Finally, there was no prejudice in denying the continuance. It appears that Defendant had already been examined by an expert. Further, without a showing that there is a sex offender profile and that Defendant did not fit the profile, it is speculative to conclude that Defendant was prejudiced by the failure of the trial court to allow a continuance so that Defendant could pursue an evaluation by Dr. Roll. *See State v. Perez,* 95 N.M. 262, 264, 620 P.2d 1287, 1289 (1980) (pointing out that the court does not possess the luxury of hindsight and that under facts known to the court at the time, denial of a motion was not an abuse). We conclude that the trial court did not abuse its discretion in denying the motion for a continuance.

{28} Insofar as Defendant claims that counsel was unprepared for trial, the record shows otherwise. *See State v. Brazeal,* 109 N.M. 752, 758, 790 P.2d 1033, 1039 (Ct.App. 1990) (pointing out that where continuance is sought to obtain defense witnesses, in order to show prejudice, there must be a showing that the witness was willing to testify and would have given substantially favorable evidence). Further, the record shows that defense counsel effectively cross-examined the State's witnesses and presented witnesses of his own attacking the credibility of the victim. Defendant has not shown a reasonable probability that the result would have been different but for the court's denial of his motion for a continuance. *Id.*

## IDENTICAL JURY INSTRUCTIONS

{29} Defendant contends that the trial court erred in sending the jury nine identical jury instructions on the nine different counts of criminal sexual penetration. The instructions did not distinguish among the charges in any way such as date, location, or acts alleged. Defendant contends that the instructions violated due process and double jeopardy. Defendant's brief asserts that he made numerous objections to the case going to the jury on multiple counts. In fact, Defendant's arguments did not address the multiple counts, but rather requested that the State be required to limit the time frame of the incidents. At the time of settling the jury instructions, there was further argument about the violation of due process. The argument in Defendant's brief, however, does not address the arguments made to the trial court pursuant to *State v. Baldonado,* 1998–NMCA–040, 124 N.M. 745, 955 P.2d 214. Therefore, we deem the *Baldonado* due process arguments to have been waived.

{30} Defendant's brief argues instead, relying on out-of-state authority, that sending multiple, carbon-copy counts of sexual abuse to the jury violates double jeopardy where there were no distinguishing factual bases for the multiple charges. *See Valen-*

*tine v. Konteh*, 395 F.3d 626, 628 (6th Cir. 2005) (overturning most of the defendant's convictions where prosecution provided no factual basis in indictment or at trial to differentiate between counts, and instead relied on child's statement that abuse had occurred "about 20 times"). Contrary to the cited authority, here the victim linked the different counts to different locations. While most of the charges could not be linked to a particular time, the victim was able to identify five different locations where the abuse occurred. The victim was also able to identify the time periods when some of the incidents took place by identifying which trucking company Defendant was working for at the time. The victim also described differences in the manner in which Defendant penetrated him. Thus, the evidence presented to the jury shows that there were some distinguishing facts for the different counts.

{31} Defendant does not explain how double jeopardy was violated by the conviction on two counts, except to argue that he could have been convicted on separate counts for unitary conduct. However, if there was sufficient evidence from which the jury could have found that each act was in some sense distinct from the other, then the conduct was not unitary. *State v. McClendon*, 2001-NMSC-023, ¶ 5, 130 N.M. 551, 28 P.3d 1092. As we pointed out above, there was sufficient evidence presented to the jury from which it could have found two separate incidents of criminal sexual penetration. The fact that each incident was instructed identically does not change this conclusion. Thus, there was no violation of double jeopardy in the manner in which the jury was instructed. *See State v. Orgain*, 115 N.M. 123, 125, 847 P.2d 1377, 1379 (Ct.App.1993) (finding no prejudice from multiple charges where the jury demonstrated it could apply the evidence to the charges by acquitting on some counts and convicting on others).

## SENTENCING AND GOOD TIME

{32} Defendant contends that an amended judgment and sentence needs to be filed, making it clear that he is entitled to good time credit under the old version of Section 33–2–34 rather than the new statute which is effective for those offenses committed on or after July 1, 1999. The Earned Meritorious Deductions Act provides an inmate the opportunity to reduce his actual time spent in the penitentiary. Before July 1, 1999, an inmate could earn thirty days' credit for every month served without incident, thus reducing his or her actual sentence by as much as 50%. NMSA 1978, § 33–2–34(A) (1988). After July 1, 1999, when a defendant is convicted of certain serious violent offenses listed in the statute, the amount of time that he or she can earn is only four days per month. Section 33–2–34(A)(1) (1999). The change in the statute is effective for those offenses that were committed on or after July 1, 1999.

{33} Here, Defendant was charged with nine counts of CSP over a period from June 1996 through December 1999. None of the counts, however, was specifically limited to a particular time. Thus, there is no way to know which counts may have occurred after July 1, 1999. Defendant was convicted of Counts 1 and 9. Although the State argues and the trial court suggested that the conviction on Count 1 was for the first act in 1996 and the conviction on Count 9 was for the last act in 1999, neither the jury instructions nor the verdicts suggest that. When the trial court was requested to make a ruling on the issue, it asked for briefing. Although Defendant briefed the matter, the record does not show a ruling by the trial court.

{34} The State argues that, because there was a general verdict, we should assume that one of the convictions was for acts that occurred after July 1, 1999. The State asserts that we are permitted to make that assumption under the rule that a conviction based on a general verdict of guilt should be upheld so long as one of the alternative bases for conviction is supported by substantial evidence. *See State v. Foster*, 1999–NMSC–007, ¶ 27, 126 N.M. 646, 974 P.2d 140.

{35} We agree with the State's rendition of the above rule, but we find the legal inadequacy doctrine to be more analogous to the present situation. Under that doctrine, a conviction cannot stand where a defendant has been charged under two legal theories, one of which is legally inadequate, and, due to a general verdict, it cannot be determined whether the jury convicted on the permissi-

ble or the impermissible theory. *See State v. Olguin,* 120 N.M. 740, 741, 906 P.2d 731, 732 (1995); *see also Foster,* 1999–NMSC–007, ¶ 27, 126 N.M. 646, 974 P.2d 140 (applying legal inadequacy doctrine where, due to general verdict, it could not be determined whether defendant's double jeopardy rights were violated). We find the situation in this case to be similar to the legal inadequacy doctrine. The verdict here is inadequate to support a conclusion that Defendant committed an act occurring after July 1, 1999.

{36} When young children are involved, we have allowed the State to use charging instruments, such as the one in this case, that cover relatively long periods of time. *See Baldonado,* 1998–NMCA–040, ¶ 1, 124 N.M. 745, 955 P.2d 214. However, where the State is unable to specify a time period for particular acts during the guilt phase, we will not allow it to argue at sentencing that one of the convictions was for acts that occurred at a particular time. We thus decline to presume that one of the jury's convictions was for acts that occurred after July 1, 1999, where the jury was presented with evidence of a number of acts that occurred over two and a half years and was not asked to specify that one act occurred after July 1, 1999.

{37} The State requests that the matter be remanded for resentencing if we conclude that the earlier version of Section 33–2–34 applies. It argues that the trial court sentenced Defendant under the assumption that Count 9 was a serious violent offense for which Defendant would receive only four days per month of good time credit, and that the trial court ran the sentences concurrently for that reason. There is nothing in the record suggesting that. In addition, we do not remand for resentencing when the trial court has entered a lawful sentence after being made aware of potential problems with the sentence. *See State v. Duhon,* 2005–NMCA–120, ¶ 19, 138 N.M. 466, 122 P.3d 50, *cert. granted,* 2005–NMCERT–010, 138 N.M. 494, 122 P.3d 1263. However, we do remand so that the judgment and sentence makes it clear that neither count for which Defendant was convicted may be used to deny him the opportunity to earn thirty days per month of credit.

## CONCLUSION

{38} Finding no error on the part of the trial court, we affirm the convictions. Further, we remand to the trial court for entry of an amended judgment and sentence, clarifying that neither of Defendant's offenses may be used to deny him the opportunity to earn thirty days per month of good time credit.

{39} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and IRA ROBINSON, Judges.