This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37172**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**VALERIE HERRERA a/k/a**
**VALEREY J. HERRERA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Daniel A. Bryant, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
John Kloss, Assistant Attorney General
Albuquerque, NM

for Appellee

Stalter Law LLC
Kenneth H. Stalter
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** Defendant Valerie Herrera, convicted of aggravated battery upon a peace officer, contrary to NMSA 1978, Section 30-22-25(B) (1971); and escape from custody of a peace officer, contrary to NMSA 1978, Section 30-22-10 (1963), appeals her convictions by challenging the district court's denial of her motion to continue her trial and by alleging that she received ineffective assistance of counsel. She further appeals

her conviction for escape from a peace officer on the basis that the jury instruction associated with it was flawed. We agree with Defendant on the jury instruction issue and therefore reverse the escape conviction but otherwise affirm.

**BACKGROUND**

**{2}**     On June 17, 2016, Defendant was arrested on three warrants and taken to the Lincoln County Sheriff's Department (LCSD). From there, Deputy Anthony Manfredi set out to transport Defendant to the Lincoln County Detention Center. Defendant was "calm and compliant," so her hands were cuffed in the front before she was placed in the back seat of Deputy Manfredi's vehicle. Partway into the drive, Defendant started to roll down her window. Deputy Manfredi pulled over and got out to address the situation. He saw that Defendant had managed to slip one hand from her cuffs, and that she was climbing outside the window. Deputy Manfredi pushed Defendant back inside the vehicle and opened the door to adjust her handcuffs. Once the door was open, Defendant tried to grab Deputy Manfredi's weapon. A struggle ensued, during which Defendant got into the driver's seat, tried to start the engine, reached for Deputy Manfredi's weapon two more times, broke the car radio microphone, bit Deputy Manfredi's finger, and bit his forearm twice. Deputy Manfredi, meanwhile, called for help and was assisted by another deputy, Deputy Deanna Preston, who helped him restrain Defendant.

**{3}**     Charges against Defendant were filed first in magistrate court, then in district court on July 15, 2016. They consisted of (1) aggravated assault upon a peace officer, (2) aggravated battery upon a peace officer, (3) escape or attempt to escape from a peace officer, and (4) criminal damage to property (over $1,000). The State ultimately dropped the first charge and reduced the amount in issue of the fourth charge to under $1,000.

**{4}**     Public defender Kirby Wills entered his appearance as counsel for Defendant on July 27, 2016. Notice of a docket call and a July 19, 2017 trial setting was filed several months later, on May 24, 2017.

**{5}**     At the June 28, 2017 docket call, a different public defender, Taina Colon, appeared as counsel for Defendant. She told the district court that she was taking over for Wills because he was leaving his employment with the Public Defender Office. At the end of the proceeding, the district court announced that the case was still scheduled for trial on the July 19 trailing docket.

**{6}**     On the morning of trial, Colon moved for a continuance on behalf of Defendant, which the State opposed. Broadly speaking, Colon argued that the continuance was necessary because she was not ready for trial, due largely to her newness to the case and her heavy workload, and because going to trial as planned would potentially foreclose two uninvestigated avenues of defense: that Defendant's arrest was invalid and that Defendant was acting in self-defense. The district court denied the motion, and the case proceeded to trial.

**{7}** At the close of evidence, an issue arose around an element of the escape charge: whether Defendant's arrest was for the commission or alleged commission of a felony. The State put on evidence that, if believed, would satisfy the element, but the jury instruction for that charge omitted reference to it. The jury ultimately found Defendant not guilty of criminal damage to property, but guilty of aggravated battery upon a peace officer and escape from custody of a peace officer.

## DISCUSSION

**{8}** Defendant challenges the district court's denial of her motion to continue trial and the propriety of the jury instruction associated with her conviction for escape from custody of a peace officer. She alleges that the denial was an abuse of discretion. We conclude that there was no such abuse in the denial of the motion to continue, but agree that the instruction was erroneous. Defendant also argues that she received ineffective assistance of counsel, an argument that we determine lacks merit. Additional facts related to these issues are discussed below.

## I. The District Court Did Not Abuse Its Discretion in Denying Defendant's Motion to Continue Trial

**{9}** "When reviewing the denial of a motion for continuance, courts consider several factors[.]" *State v. Gonzales*, 2017-NMCA-080, ¶ 33, 406 P.3d 534; *see id.* (listing factors first enumerated in *State v. Torres*, 1999-NMSC-010, ¶ 10, 127 N.M. 20, 976 P.2d 20). They are:

> (1) the length of the requested delay; (2) the likelihood that a delay would accomplish the movant's objectives; (3) the existence of previous continuances in the same matter; (4) the degree of inconvenience to the parties and the court; (5) the legitimacy of the motives in requesting the delay; (6) the fault of the movant in causing a need for the delay; and (7) the prejudice to the movant in denying the motion.

*Gonzales*, 2017-NMCA-080, ¶ 33 (internal quotation marks and citation omitted). This is a non-exhaustive list; other factors may also be relevant. *See State v. Salazar*, 2007-NMSC-004, ¶ 15, 141 N.M. 148, 152 P.3d 135. Since "[t]he grant or denial of a continuance is within the sound discretion of the trial court," *id.* ¶ 10, to succeed on appeal, a defendant challenging such a denial must show an abuse of discretion under the *Torres* factors; he or she must also show injury resulting from that abuse. *See Salazar*, 2007-NMSC-004, ¶ 10.

**{10}** "An abuse of discretion occurs when [a] ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted).

**{11}** Defendant has not persuaded us, as she must to meet her burden, that the district court abused its discretion in denying the continuance. The ruling was not clearly against the logic and effect of the facts and circumstances of the case, nor is it one we are in a position to second-guess. *See State v. Le Mier*, 2017-NMSC-017, ¶ 17, 394 P.3d 959 (stating "we cannot second-guess our courts' determinations as to how their discretionary authority is best exercised").

**{12}** This is true under both an application of the *Torres* factors and also Defendant's related assertion of error: that the district court "failed to apply the *Torres* factors" and "did not consider" three of them. Before considering the district court's determination under those factors, we first briefly note that the record belies these assertions. During argument on the motion, Defendant cited *Torres* and another case for law governing the circumstances. The district court recessed for about half an hour to review the cases. We presume that during the recess and the ensuing resumption of argument, the district court considered the *Torres* factors, *see State v. Gonzales*, 1999-NMCA-027, ¶ 15, 126 N.M. 742, 975 P.2d 355 ("As a general rule, we will indulge in all reasonable presumptions in support of the district court's ruling."), and insofar as Defendant argues that the court failed to make an oral finding on every factor, we note that the district court was not required to do so. *See id.* ¶ 11 ("No rule of criminal procedure requires the district court to set forth the factual basis of its decision.").

### A. First, Third, and Fifth Factors: Length of Delay; Previous Continuances; Legitimacy of Motives

**{13}** Defendant's motion for a continuance of about thirty days represented her first request for a continuance, and there was no evidence that the request was made with anything other than legitimate motives. By themselves these facts might favor Defendant, but they mean little in the context of other considerations.

### B. Fourth Factor: Inconvenience to the Parties and the Court

**{14}** Given that Defendant's request came on the morning of trial, a delay of any length and for any reason would come at a cost, since "we presume resetting the trial date on the day trial is supposed to begin is inconvenient for the parties and for the court." *Gonzales*, 2017-NMCA-080, ¶ 36; *State v. Salazar*, 2006-NMCA-066, ¶ 21, 139 N.M. 603, 136 P.3d 1013 ("[A] motion for continuance filed at the last minute is not favored."). Trial courts bear the burden of "assembling the witnesses, lawyers, and jurors at the same place at the same time," and this burden is great enough to " 'counsel[] against continuances except for compelling reasons.' " *State v. Brazeal*, 1990-NMCA-010, ¶ 16, 109 N.M. 752, 790 P.2d 1033 (quoting *Morris v. Slappy*, 461 U.S. 1, 11 (1983)). Beyond considering its own inconvenience, the district court here could have heeded the State's related concerns: it had spent time and energy assembling its witnesses and lawyers and did not want to repeat the effort, particularly given the potential for future witness absence or unavailability.

### C. Seventh Factor: Prejudice

**{15}**     Colon argued that her lack of preparation would prevent her from providing effective assistance and thereby prejudice Defendant should the case go to trial as planned. The district court found, however, that the case was simple, that Colon had reviewed the police video of the incident that would be used in evidence, and that Colon had trial experience. These factors, the district court said, created little likelihood of prejudice to Defendant from going to trial that day. Defendant does not now challenge the district court's findings, so we deem them conclusive. *See* Rule 12-318(A)(4) NMRA (providing that a finding not attacked on appeal is deemed conclusive). We also recognize them as adding support for the denial.

**{16}**     Colon also argued that prejudice would result from the denial because it would foreclose one or both of two defenses—defenses Colon said she did not have time to investigate: the validity of Defendant's arrest, which would have undermined the charges of battery and escape;[1] and self-defense. The district court viewed the defenses as not viable, in that Defendant presented no facts supporting them. Defendant does not challenge these findings, either, but rather argues in the abstract that the defenses cited are valid defenses to the charges against Defendant and posits that they might have come to her aid after a search for relevant facts. But the truth of those assertions is beside the point.

**{17}**     The district court was unwilling to grant the continuance so that Colon could conduct a search for facts in support of the hypothetical defenses. As the district court rationally pointed out, to accept as adequate counsel's simple naming of a potential defense—absent any indication of its viability—would in effect be to surrender some of the court's control over its dockets: a given trial could begin only after the defense took it upon itself to investigate the case and satisfy itself that the facts foreclosed all conceivable avenues of defense.[2] Moreover, allowances of this kind would encourage dilatory conduct by counsel.

**{18}**     In addition to the district court's concerns regarding its ability to control its docket, the district court rationally concluded that prejudice was unlikely to result from the denial. Defense counsel presented no evidence suggesting that either defense was plausible. As merely speculative defenses, they cannot have been seen as likely to change the course of trial and, consequently, to have prejudiced Defendant. *See Salazar*, 2006-NMCA-066, ¶ 27 (recognizing no prejudice where the defendant failed to make a factual showing of his defense theory's validity).

### D.     Second Factor: Likelihood of Accomplishing Defense Objectives

---

1The charges respectively alleged that Deputy Manfredi was acting "in the lawful performance of his duties," and that Defendant was "lawfully arrested."

2During argument on the motion, the district court judge asked Colon:

If the grounds you have expressed today, the existence of a possible defense about which you know nothing, . . . the fact that you were assigned this case in June, the fact that you're unprepared, that you have done some of the preparation but not all of the preparation—if I vacate jury trials on the strength of that kind of a representation, what jury trial do I ever get to conduct, until counsel is ready to just come in and say, "okay, Judge, we will let you do this jury trial today."

**{19}** Moreover, the district court could have reasonably doubted whether Colon would pursue these defenses and otherwise be ready for trial if given thirty more days to prepare. Colon had implied three weeks earlier at the docket call that she would be ready for the July 19 trial, but when that day came, said her heavy workload had prevented her from adequately preparing. Considering this, and the absence of reason to believe Colon's workload would lighten in thirty days, the district court could have envisioned the situation repeating itself.

### E.	Sixth Factor: Fault for Creating the Need for Delay

**{20}** The district court faulted the defense for creating the need for a continuance, and not without reason. The proceedings against Defendant began in June 2016, and the Public Defender Office was promptly assigned to represent her. Defense counsel thus had over a year to investigate what the district court characterized as a "simple" and "straightforward" case, one with only two witnesses and a set of facts outlined in their entirety in the probable cause statement. The State said it needed only about half a day to prepare for the case. Notice of the July 19, 2017 trial setting was filed almost two months before trial, and at the June 28, 2017 docket call, Colon neither requested a continuance nor indicated one might be needed, even after the district court asked the parties whether they would be ready for trial as scheduled. Furthermore, the Public Defender Office knew of Wills's impending departure and thus could have managed its personnel and time before trial in such a way as to timely prepare its defense.

**{21}** This lack of diligence on the part of the defense, along with the other factors weighing against Defendant, justify the denial. *See State v. Perez*, 1980-NMSC-143, ¶ 4, 95 N.M. 262, 620 P.2d 1287 (upholding a denial of continuance where the defense exhibited a lack of diligence in securing a witness); *Salazar*, 2006-NMCA-066, ¶ 26 (upholding a denial of continuance where defense counsel showed a lack of diligence in preparing for trial). Accordingly, the denial of Defendant's motion for a continuance was not an abuse of discretion. *See Le Mier*, 2017-NMSC-017, ¶ 18 ("[T]rial courts shoulder the significant and important responsibility of ensuring the efficient administration of justice in the matters over which they preside, and it is our obligation [as an appellate court] to support them in fulfilling this responsibility.").

### II.	The District Court Erred in Giving a Jury Instruction on the Charge of Escape From Custody of a Peace Officer That Omitted an Element Concerning the Commission or Alleged Commission of a Felony

**{22}** Defendant next argues that her conviction for escape from custody of a peace officer should be reversed because it stemmed from an improper jury instruction. Specifically, she argues that it was error to omit from the instruction an element requisite to the finding of guilt: that the arrest that brought Defendant into custody and that preceded her attempted escape was for having actually or allegedly committed a felony.

**{23}** "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citation omitted). In this case, Defendant objected to the instruction.[3] Regardless, "[u]nder both standards we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (internal quotation marks and citation omitted). "[J]uror confusion or misdirection may stem . . . from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.* In short, "[a] jury instruction which does not instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury is reversible error." *State v. Dowling*, 2011-NMSC-016, ¶ 14, 150 N.M. 110, 257 P.3d 930 (internal quotation marks and citation omitted).

**{24}** Defendant's conviction of escape from custody of a peace officer indeed followed from such a reversible error: the jury instruction associated with the conviction did not instruct the jury on one element essential to the crime. Section 30-22-10 provides that such escape "consists of any person who shall have been placed under lawful arrest for the commission or alleged commission of any felony, unlawfully escaping or attempting to escape from the custody or control of any peace officer." The statute plainly includes the element of "arrest for the commission or alleged commission of any felony[.]" *See State v. Cabezuela*, 2011-NMSC-041, ¶ 38, 150 N.M. 654, 265 P.3d 705 ("The language of a statute determines the essential elements of an offense." (internal quotation marks and citation omitted)).

**{25}** The jury instruction used here, in contrast, was silent on the nature of the warrant that led to Defendant's custody. The instruction read in full:

> For you to find [D]efendant guilty of escape from custody of a peace officer as charged in Count 2, the [S]tate must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1.    [D]efendant was arrested under authority of a warrant;
>
> 2.    [D]efendant attempted to escape from the custody of a Deputy . . . Manfredi with the [LCSD]; [and]
>
> 3.    This happened in New Mexico on or about the 17th day of June, 2016.

---

3The State argues that we should only review for fundamental error, asserting that Defendant "expressly stipulated" to giving the UJI. We are not persuaded. First, as the State notes, Defendant offered that stipulation on the condition that she did not waive her right to appeal the issue. Second, Defendant indicated that her offered stipulation was to prevent prejudice that would result from an officer testifying that there were felony warrants. However, immediately after the offered stipulation, the district court ruled that it would allow the State to reopen its evidence for a discussion of whether the underlying charges of the case in which the warrants were issued were felonies. In effect, this ruling was a rejection of the offered stipulation.

**{26}**     The instruction tracked the language of the corresponding UJI 14-2223 NMRA.[4] The UJI instructs that, when the evidence establishes that the defendant was arrested "under authority of a warrant," that same phrase—without any reference to "felony"— should be used in paragraph one, as it was here. Although the district court recognized the discrepancy between Section 30-22-10 and UJI 14-2223, the district court ultimately deferred to the UJI.

**{27}**     When there is such a conflict between a criminal statute and its corresponding UJI, however, the statute controls. *See* Rule 5-608(A) NMRA ("The court must instruct the jury upon all questions of law essential for a conviction of any crime submitted to the jury."); *State v. Osborne*, 1991-NMSC-032, ¶ 10, 111 N.M. 654, 808 P.2d 624 (treating Rule 5-608(A) as requiring the trial court to instruct the jury on all essential elements of a crime, even when the relevant UJI leaves out an element).

**{28}**     Because the instruction given the jury omitted an essential element of the crime—that the arrest leading up to Defendant's custody was for the actual or alleged commission of a felony—we reverse her conviction for escape from a peace officer. Having done so, we consider whether there was sufficient evidence presented at trial to support the conviction, should the State wish to retry Defendant on that charge. *See State v. Samora*, 2016-NMSC-031, ¶ 34, 387 P.3d 230.

**{29}**     "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *Id.* (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Baca*, 2019-NMSC-014, ¶ 17, 448 P.3d 576 (internal quotation marks and citation omitted). "[W]e view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Samora*, 2016-NMSC-031, ¶ 34 (internal quotation marks and citation omitted).

**{30}**     Applying these principles here, we conclude that the State presented sufficient evidence to support a finding of guilt beyond a reasonable doubt on the charge of escape from a peace officer. The testimony of Phillip Wall, a deputy with the LCSD, established that on June 16, 2017, he arrested Defendant on three bench warrants, at least one of which was associated with the commission of a felony. Meanwhile, video

---



4UJI 14-2223 reads in full:
For you to find the defendant guilty of escape from custody of a peace officer [as charged in Count] _____[1], the state must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
1.      The defendant was arrested [under authority of a warrant][2] [upon reasonable grounds to believe that he had committed _____[3]];
2.      The defendant [escaped]2 [attempted to escape] from the custody of a _____ (*official title*);
3.      This happened in New Mexico on or about the ___ day of _____, _____.
Footnote three instructs that only one of the bracketed elements be selected, and the choice depends on the evidence.

taken of the incident and played for the jury established substantial evidence that Defendant tried to escape from Deputy Manfredi's vehicle on the way to the detention center.

### III.    Defendant's Ineffective Assistance of Counsel Claim Lacks Merit

**{31}**    Defendant raises a third issue that we perceive as inadequately developed and otherwise lacking merit. We understand Defendant to argue that Colon's pretrial inadequacies—her failures to conduct witness interviews, examine the arrest warrants, speak to Defendant confidentially before the day of trial, investigate the legality of the arrest, explore the possibility of a self-defense theory, watch the video any sooner, and move for a continuance any sooner—created a presumption of prejudice that, under *State v. Grogan*, 2007-NMSC-039, 142 N.M. 107, 163 P.3d 494, the district court should have sua sponte recognized in order "to protect the defendant's right to effective assistance and to protect the integrity of the court." *Id.* ¶ 15. Defendant seems to suggest that this presumption forecloses the need to examine through a habeas proceeding whether Colon's trial performance resulted in actual prejudice.

**{32}**    *Grogan* is inapposite, in that it concerned the effective assistance of counsel predominately at trial, not before trial. *See id.* ¶ 5. Moreover, *Grogan* addressed the issue whether the trial court judge, who sat through the entire trial, abused his discretion by ordering a new trial after finding that the defendant was denied effective assistance at trial. *Id.* ¶ 8. In contrast, there is no suggestion in this case that Colon's trial performance was inadequate, or that the trial judge witnessed any "gross or obvious incompetence" that should have prompted it to inquire into Colon's trial actions. Most obviously, the district court here did not order a new trial, as did the court in *Grogan*. *Id.* ¶ 15.

**{33}**    In sum, Defendant fails to meet her burden to persuade us that the assistance of counsel she received should be presumed ineffective. Our holding does not preclude Defendant from pursuing her claims in a habeas corpus proceeding. *See Duncan v. Kerby*, 1993-NMSC-011, ¶ 7, 115 N.M. 344, 851 P.2d 466 (expressing a preference that ineffective assistance of counsel claims be adjudicated in habeas corpus proceedings, rather than on direct appeal).

**CONCLUSION**

**{34}**    We affirm in part and reverse in part.

**{35}    IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**